Shatish PATEL, M.D., Hemalatha Vijayan, M.D., Subodh Sonwalkar, M.D., Wolley Oladut, M.D., Appellants

v.

ST. LUKE'S SUGAR LAND PARTNERSHIP, L.L.P. and St. Luke's Community Development Corporation–Sugar Land, Appellees.

No. 01–13–00273–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 7, 2013.

Rehearing Overruled Jan. 27, 2014.

Hiren P. Patel, Robert W. Ervin, Patel Ervin PLLC, Houston, TX, Matthew J. Kita, Dallas, TX, for Appellants.

Keith Remels, J. Beverly, Dow, Golub, Remels & Beverly LLP, Kenneth E. Broughton, Francisco Rivero, Houston, TX, for Appellees.

Panel consists of Justices KEYES, HIGLEY, and MASSENGALE.

## OPINION

MICHAEL MASSENGALE, Justice.

Appellants Dr. Shatish Patel, Dr. Hemalatha Vijayan, Dr. Subodh Sonwalkar, and Dr. Wolley Oladut bring this interlocutory appeal from the trial court's denial of their renewed application for a temporary injunction relating to St. Luke's Sugar Land Hospital. The physicians sought to enjoin St. Luke's Sugar Land Partnership, L.L.P. and its managing partner, St. Luke's Community Development Corporation—Sugar Land (collectively, "St. Luke's") from taking certain actions that would prevent their participation in the management and control of a partnership formed to own and operate the hospital. We reverse the trial court's order denying the application on the grounds of mootness.

### Background

This is the second interlocutory appeal from denials of requests for a temporary injunction in a lawsuit between several physicians and a hospital management partnership. The appellants are physicians who purchased partnership interests in St. Luke's Sugar Land Partnership, L.L.P., which was created to own and operate a hospital in Sugar Land. Ownership of the Partnership was divided into two classes of partnership units: Class A units, which were reserved for physicians, and Class B units, which were reserved for the

Partnership's managing partner, St. Luke's Community Development Corporation—Sugar Land, which in turn is a wholly-owned subsidiary of the St. Luke's Episcopal Health System Corporation.

In 2007, the Partnership adopted an Amended Partnership Agreement that established a Governing Board to manage several aspects of the Partnership. Although certain decisions could be made by the holders of an outright majority of the Partnership units, an affirmative vote of board members controlling greater than 50% of the "Voting Interest" was required for all decisions of the Governing Board. The physician representatives on the board who held Class A units were to "collectively control forty-nine (49%) of the Voting Interest." A vote of Governing Board members representing a supermajority of at least 75% of the Voting Interest was required to take several major actions, including making a capital call.

In April 2011, Shatish Patel, a physician partner who had served on the Governing Board, sued the Partnership. Patel alleged that he was promised healthy returns when he purchased his Class A units, but instead the Partnership was operating at a net loss. He further alleged that after an unsuccessful attempt to obtain financial information from the Partnership, he was forced to resign his hospital privileges and also to resign as a member of the Governing Board. He asserted various causes of action including breach of fiduciary duty, fraud, misrepresentation, and theft. A few weeks later, the Partnership made a rescission offer to each physician owner of Class A units. The letter noted that:

> [I]t is possible that the Partnership may (1) adopt a mandatory capital call strategy to address future funding of the Partnership and its operation; and/or (2) dissolve, and transfer the hospital to a wholly owned nonprofit affiliate of [St. Luke's Episcopal Hospital System] due to capital constraints.

All but four of the physician owners of Class A units accepted the Partnership's rescission offer. The four who refused the offer are the appellants in this case. After the other physicians' acceptance of the rescission offer, the appellant physicians owned 12 partnership units, and the managing partner owned the rest. The Partnership interpreted the Amended Partnership Agreement to allow the managing partner to control the actions of the Governing Board by virtue of its post-rescission claim to ownership of 95.5% of the partnership units.

On September 2, 2011, the Partnership's Governing Board initiated a capital call without the participation of any board members appointed by the physician partners. Notice of the capital call was sent to Patel, Vijayan, Sonwalkar, and Oladut. The capital call required a contribution of $487,037 each from Patel and Vijayan and $243,518.50 each from Sonwalkar and Oladut, based on the number of units owned by each. The notice of capital call stated that the failure to make the capital contribution by September 30 would amount to a default, allowing the Partnership to terminate the physician's partnership interest. In response, Sonwalkar and Oladut joined Patel and Vijayan in their lawsuit.

The physician partners did not make any contribution in response to the capital call, and the Partnership sent written notice of their purported default. In response, the physicians' attorneys sent the Partnership a letter asserting that the capital call was an ultra vires act under the terms of the Amended Partnership Agreement. On October 3, 2011, the physicians applied for a temporary injunction. They sought to enjoin St. Luke's from taking

various actions with respect to the Partnership.

In mid-October, the Partnership sent a notice to the physicians, contending that their partnership interests had been terminated, and a request was later sent for the physician partners to assign their interests to the Partnership. On November 8, 2011, the trial court denied the application for temporary injunction. The physicians appealed the denial, but they did not request temporary relief to prevent the Partnership from undertaking any further actions pending the interlocutory appeal. *See* Tex. R.App. P. 29.3.

After denial of the temporary injunction and while the interlocutory appeal was pending, St. Luke's considered the physicians' interests in the Partnership to have been terminated. Based on this understanding, the managing partner treated the Partnership as a defunct entity, and beginning in late 2011 it began the process of assuming direct responsibility for operation of the hospital by transferring essential licenses and other paperwork into its own name.

The physician partners ultimately prevailed in their interlocutory appeal of the trial court's denial of their October 2011 application for a temporary injunction. *See Sonwalkar v. St. Luke's Sugar Land P'ship, L.L.P.,* 394 S.W.3d 186 (Tex.App.-Houston [1st Dist.] 2012, no pet.). This court concluded that as of the time of the denial of their application for temporary injunction, the physician partners were entitled to enjoin actions intended to effect the termination of their partnership interests. Because the capital call was disallowed under the Amended Partnership Agreement, the physicians' partnership interests could not be terminated for failure to pay. Therefore, absent an injunction, they faced the possibility of the irreparable injury of the loss of their management rights. *Id.* at 201–03. Specifically, this court determined that the physician partners collectively controlled 49% of the Partnership's Voting Interest as the remaining Class A unit holders, allowing them to block certain actions of the Governing Board that required a supermajority vote. *Id.* at 201. We remanded for further proceedings in the trial court. *Id.* at 203. St. Luke's did not file a petition for review of our decision.

After our mandate issued, the physicians renewed their October 2011 application for temporary injunction. A temporary injunction hearing was set for December 21, 2012. Two days before the hearing, St. Luke's filed a motion to dismiss the application for temporary injunction on the basis of mootness. Despite having never suggested mootness during the course of the interlocutory appeal, and despite our opinion which explained that the capital call had been ineffective to terminate the physicians' partnership interests, St. Luke's argued to the trial court that the request for a temporary injunction was moot because there had been "Changed Circumstances Since the Filing of the Application." In its written response filed in the trial court, St. Luke's argued as follows:

> Plaintiffs made no attempt to preserve their rights pending appeal. So the Partnership went forward with the previously planned and noticed capital call. The Managing Partner contributed capital in excess of $24,000,000. Plaintiffs did not contribute any additional capital. When notified and provided the opportunity to cure, they failed to do so. Therefore, the Partnership sent Plaintiffs a notice stating that their partnership interests had been terminated. As a result of the termination, only the Managing Partner remained a unit holder. Because there were no

longer at least two partners, the Hospital ceased to operate as a partnership. It was owned solely by the Managing Partner, a non-profit entity.

In order to carry out its status as a non-profit corporation and in order to comply with regulatory guidelines applicable to the operation of a non-profit Hospital, the Managing Partner undertook certain actions. Specifically, the Managing Partner:

(i) Withdrew the registration of the Partnership as a limited liability partnership with the Texas Secretary of State;

(ii) Filed an assumed name certificate for St. Luke's to do business as St. Luke's Sugar Land Hospital;

(iii) Filed a final sales tax return for the Partnership with Texas Comptroller;

(iv) Terminated the existing Management Agreement and Purchased Services Agreements;

(v) Transferred its provider number though CMS [Centers for Medicare and Medicaid Services];

(vi) Assigned equipment leases;

(vii) Advised and/or registered St. Luke's as the provider of services with several governmental entities and agencies, including, Texas Medicaid, the Drug Enforcement Agency, the Texas Board of Pharmacy, and the Texas Department of Public Safety (for registration of narcotics and radiation resources); and

(viii) Obtained, as required, new accreditation (or provided notification of changes for accreditation) with numerous agencies or entities, including with Det Norske Veritas, the College of American Pathologists, and the American College of Radiology.

In addition, as a result of the change in ownership of the Hospital, the Managing Partner was required to change its insurance coverage, utilities, supply and vendor contracts, and equipment and services agreements. Finally, the property where the Hospital is located (which was previously leased by the Partnership) was purchased by an affiliated company of the Managing Partner at significant expense.

Notably, St. Luke's did not attach to its written response any evidence to support the factual allegations recited in support of its mootness argument.

The hearing on the renewed application for temporary injunction focused on the suggestion of mootness. St. Luke's presented one witness to support its argument, David Koontz, Senior Vice President of the St. Luke's Health Care System. Koontz had assumed numerous roles with respect to the operations of the Partnership, including serving as "member of the Board, sometimes Interim CEO and for a period the Chair of the Board of the Partnership."

In his testimony, Koontz recounted the history of the Partnership's attempted capital call, including the refusal of the four physician partners to make the capital contribution and the Partnership's subsequent notification to them of the purported termination of their partnership interests. He repeatedly testified that after the purported termination of the remaining physician partners' interests, the managing partner considered the Partnership to have no other remaining partners.

Koontz then proceeded to describe the course of events upon which St. Luke's relied to demonstrate the mootness of the request for a temporary injunction. In his capacity as Senior Vice President, it was Koontz's job to confirm completion of all

action necessary for the managing partner to assume the authority to operate St. Luke's Sugar Land Hospital. One such action was to "transfer" a "provider number"[1] through the Centers for Medicare and Medicaid Services (CMS), which was necessary for the managing partner to receive payment from the government for services covered by Medicare and Medicaid, as well as payment from private insurers. Koontz testified that it took "six to nine months" to transfer the provider number for St. Luke's Sugar Land Hospital from the Partnership to the managing partner. He explained that the "main challenge was the unusual nature of the request we were making of CMS" because:

> When they see a transfer of CMS number from one company to another, they are used to some documents accompanying that. Some—you know, some codifying documents. And one of the things that they suggested would be a Bill of Sale. Instead we had to produce other documents. I think those related to the rescission and so on to show that there was only one partner.

Koontz opined that if a court were to order the hospital to transfer the provider number back to the Partnership, there is "no guarantee" that CMS would be able to do that, and to "send it back" now would be "very confusing ... not only to CMS but a number of others." Another "potential impediment" to transferring the number back to the Partnership, according to Koontz, is an Affordable Care Act provision which prohibits "the ownership of any new physician-owned hospital or the increase in percentage ownership of physicians in general acute care hospitals."

Koontz generally discussed the various licenses held by St. Luke's Sugar Land Hospital. He testified that the overall process of relicensing the hospital had taken "more than a few months," and involved "sending notification of a change of a tax ID associated with the provider number" and "a re-inspection." He also testified that since the managing partner's assumption of responsibility for operating the hospital, it has been operated "as a not-for-profit entity," which in the first year resulted in tax savings of "$2– to $3 million as a combination of property taxes, margin tax and sales tax."

With respect to the Partnership's debts, Koontz testified that the Partnership had approximately $50 million in debt at the time the physicians' interests were purportedly terminated. Of that amount, $12 million was a working capital loan owed to Chase, and $35 million was a seven-year loan also payable to Chase. The balance of the debt was owed to St. Luke's Episcopal Health System. On cross-examination, Koontz conceded that approximately $10 million of the debt was due to the rescission offer. He testified that St. Luke's Episcopal Health System paid off the working capital loan and extinguished its loan to the Partnership, all of which he said would have to be repaid by the Partnership "if it were reformed."

On cross-examination, Koontz also testified that it was his "understanding" that the hospital "is currently owned" by the managing partner. However, he agreed that there was no bill of sale documenting the transfer of hospital assets from the Partnership to the managing partner, and no asset purchase agreement or other document memorializing the transfer of the

---

1. The "provider number" was an apparent reference to the National Provider Identifier, which is used by health care providers and other entities to comply with federal health care regulations and to collect Medicare and Medicaid payments. *See generally* 45 C.F.R. §§ 162.100–162.1902(2012).

hospital. Notably, the Partnership's attorney objected to the cross-examination insofar as Koontz was asked about the purported "transfer" of the hospital. The Partnership's counsel argued to the trial court: "I think 'transfer' is misleading and inappropriate. *There is no evidence there was a transfer.* Once you get down to one person—I believe the law is a partnership no longer exists if there is only one partner. So, there is no transfer document necessary." (Emphasis supplied.)

Koontz denied any knowledge of any agreement with the Partnership concerning the payment of its debts by St. Luke's Episcopal Health System. He also denied knowledge of whether the Partnership currently owned any assets. With respect to the current legal status of the Partnership, Koontz testified that his understanding was that it "still needs to exist as a legal entity for the purposes of this litigation."

After the evidentiary hearing, the trial court denied the temporary injunction as moot, explaining in its order: "Since the act sought to be enjoined has already been performed, this court is no longer capable of granting the relief sought." The physicians then filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (West Supp.2012).[2]

## Analysis

■ "In general, a temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Walling v. Metcalfe,* 863 S.W.2d 56, 57 (Tex.1993). The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the

merits. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex.2002). The status quo is "the last, actual, peaceable, noncontested status which preceded the pending controversy." *In re Newton,* 146 S.W.3d 648, 651 (Tex.2004) (quoting *Janus Films, Inc. v. City of Fort Worth,* 163 Tex. 616, 617, 358 S.W.2d 589, 589 (1962) (per curiam)). To obtain a temporary injunction, the applicant must ordinarily plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru,* 84 S.W.3d at 204. The applicant is not required to establish that he will prevail on final trial; rather, the only question before the trial court is whether the applicant is entitled to preservation of the status quo pending trial on the merits. *Walling,* 863 S.W.2d at 58.

■ The decision to grant or deny a temporary injunction lies in the discretion of the trial court, and the court's ruling is subject to reversal only for a clear abuse of that discretion. *Id.* A trial court abuses its discretion in granting or denying a temporary injunction when it misapplies the law to the established facts. *INEOS Grp. Ltd. v. Chevron Phillips Chem. Co.,* 312 S.W.3d 843, 848 (Tex.App.-Houston [1st Dist.] 2009, no pet.) (citing *State v. S.W. Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex.1975)). We review the evidence submitted to the trial court in the light most favorable to its ruling, drawing all legitimate inferences from the evidence, and deferring to the trial court's resolution of conflicting evidence. *Id.* (citing *Davis v.*

2. The doctors also filed in this court a separate original proceeding requesting the issuance of a writ of temporary injunction. *In re Patel,* No. 01–13–00330–CV, 2013 WL 3422026 (Tex.App.-Houston [1st Dist.] July 2, 2013, orig. proceeding). We denied the request for equitable relief, noting that "the interlocutory appeal already filed by the relators provides an avenue of relief, including procedures to obtain temporary relief." *Id.* at *1 (citing TEX.R.APP. P. 29.3).

*Huey,* 571 S.W.2d 859, 862 (Tex.1978)). Our review is limited to determining whether the trial court abused its discretion in ruling on the application for temporary injunction; we do not reach the merits of the underlying case. *Davis,* 571 S.W.2d at 861–62.

The trial court expressly denied the physicians' renewed application for temporary injunction based on the conclusion that it was moot. In the order denying the application for temporary injunction, the trial court stated, "Since the act sought to be enjoined has already been performed, this court is no longer capable of granting the relief sought . . . ."

▆▆▆ An issue may be moot if it becomes impossible for the court to grant effective relief. *H & R Block Fin. Advisors, Inc.,* 262 S.W.3d 896, 900 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (citing *Williams v. Lara,* 52 S.W.3d 171, 184 (Tex. 2001)). The appeal of a trial court's denial of a motion for temporary injunction may become moot if the actions sought to be enjoined occur prior to the resolution of the appeal of the denial of the temporary injunction. *See Day v. First City Nat'l Bank of Hous.,* 654 S.W.2d 794, 795 (Tex. App.-Houston [14th Dist.] 1983, no writ). According to St. Luke's, that description applies to the physicians' application for temporary injunction in this case.

▆▆▆ After this court issued its opinion in *Sonwalkar v. St. Luke's Sugar Land Partnership, L.L.P.,* 394 S.W.3d 186 (Tex. App.-Houston [1st Dist.] 2012, no pet.), the physicians reurged their prior application for temporary injunction in the trial court. This application for temporary injunction did not request that St. Luke's be required to reverse any acts it had already performed, but only sought to prevent St. Luke's from taking certain future actions pertaining to the governance of the Partnership and disposition of its assets. To evaluate whether the request for temporary injunctive relief has become moot in light of the evidence presented by St. Luke's, we must consider the precise requests for relief. Those requests were:

a. Taking any action to terminate the Partnership Interests or ownership interest of . . . any of the Plaintiffs;

b. Except pursuant to a vote of the partners where Class A Unit holders have the ability to vote, collectively, 49% of the partnership interest, taking any action identified in Paragraph 8.03(h) of the Amended Partnership Agreement, including actions to:

  i. Reorganize the Partnership;

  ii. Take any action in contravention of the Amended Partnership Agreement;

  iii. Make an assignment for the benefit of creditors of the Partnership or file a voluntary petition under the federal Bankruptcy Code or any state insolvency law;

  iv. Confess any judgment against the Partnership; or

  v. Amend or otherwise change the Amended and Restated Partnership Agreement.

c. Except pursuant to a vote of the Governing Board that includes representatives of Class A Unit holders who are permitted, collectively, to vote 49% of the Voting Interest, taking any action identified in Paragraphs 8.09(a)-(f) of the Amended Partnership Agreement, including actions to:

  i. Issue new Units, admit new partners, or substitute partners in the Partnership;

  ii. Borrow money in an amount exceeding $250,000 from any third party for any purpose;

iii. Sell, transfer, assign, dispose of, trade, exchange, quitclaim, surrender, release or abandon any Partnership property or interests therein other than in an amount less than $250,000;

iv. Purchase any real property or make, execute, or deliver any deed or long-term ground lease for any real property;

v. Require or call for any additional capital contributions by the partners or approve the amounts and proportions of such additional capital contributions; or

vi. Impose or approve any fundamental or material change to the general business objectives and purpose of the Partnership.

d. Calling a Meeting of Governing Board without providing notice to the Class A Governing Board representatives elected by Class A Unit holders.

Comparing these requests to the arguments and evidence presented by St. Luke's, no new development has mooted the physicians' application for temporary injunctive relief.

The mootness arguments are essentially predicated on two premises. The first is that the physicians' interests in the Partnership were actually terminated such that the Partnership is now a defunct entity which only survives to defend this pending litigation. The second is that the Partnership's assets, principally the hospital, were conveyed to or otherwise absorbed by the managing partner, so it is too late to preserve the physicians' interest in maintaining those assets. Neither premise survives close scrutiny.

With respect to the purported termination of the physicians' partnership interests, our previous opinion already explained that the physicians demonstrated a probable right to injunctive relief to prevent the Partnership from squeezing out the physicians by means of the capital call without approval by 75% of the Voting Interest as required by the Amended Partnership Agreement. *Sonwalkar*, 394 S.W.3d at 202.[3] The managing partner may have acted on the assumption that it was authorized to take the actions it did, but the physicians have demonstrated a probable right to injunctive relief based on the argument that the managing partner's understanding was an incorrect one. Even assuming that the capital call was legitimate, and even assuming the physician partners defaulted by failing to respond to the capital call, the Partnership still failed to effectively terminate the physicians' partnership interests under the Amended Partnership Agreement, which required, among other things, the execution and delivery by the defaulting partners of "any assignments and other instruments that may be reasonable to evidence and fully and effectively transfer the interest of the Defaulting Partner." The Partnership requested assignments from the physician partners, but the physicians refused to provide them. The Partnership took no further action to confirm and enforce its interpretation of the Amended Partnership Agreement so as to terminate the interests of its remaining physician partners.[4]

---

3. The dissenting opinion in this appeal is partially premised on its rejection and re-evaluation of the grounds upon which the prior panel of this court resolved the previous interlocutory appeal.

4. The dissent does not engage this issue and simply accepts at face value the assertion that the physicians' interests have been terminated. For its part, in response to these arguments, St. Luke's notes that the Amended Partnership Agreement provided that the managing partner, acting "as the

The mere fact that the Partnership gave the physicians notices of default and termination does not mean that they actually were in default or that their partnership interests were actually terminated. The mere fact that the general partner took various actions and made representations based on a mistaken belief that the Partnership no longer existed and it somehow became the owner of the hospital by operation of law did not make it the owner of the hospital, as suggested by the dissent. The record contains no evidence that the managing partner now owns the hospital, and the dissent points to none. Accordingly, the course of the managing partner's conduct was undertaken on the mistaken assumption that the Partnership had been eviscerated, and in assumption of the risk of all consequences which may flow from actions taken in reliance on that mistaken understanding.

With respect to the contention that upon the alleged termination of the physicians' partnership interests, the Partnership had ceased to exist for any purpose other than continuing to defend this litigation, that position is undercut by the physicians'

demonstration of a probable right to injunctive relief because their interests were not actually terminated. But even supposing that the general partner had been the only remaining partner, it does not follow that the general partner was effectively the legal heir to all of the Partnership's assets, such that general partner simply could treat Partnership assets as its own. Even if the general partner had determined to wind-up the affairs of the Partnership, *see* TEX. BUS. ORG.CODE §§ 11.051, 11.057 (West 2012), the final disposition of Partnership assets is a part of the winding-up process, *see id.* § 152.706(a), and a prerequisite to the termination of a partnership business, *see id.* § 152.701(1).[5] Moreover, paragraph 13.02 of the Amended Partnership Agreement expressly provided that "[o]n termination, the assets of the Partnership shall be liquidated and applied to payment of the outstanding Partnership liabilities," and paragraph 13.03 provided that "the Partnership shall not terminate until there has been a winding up of the Partnership's business and affairs, and the assets of the Partnership

---

Defaulting Partner's irrevocable agent," was authorized to execute "any legal instruments to the appropriate continuing Partners and/or Purchaser." However, St. Luke's does not contend that such documents were actually executed, nor did it produce any evidence that this happened. St. Luke's attempts to explain this by saying that "no assignment was even necessary because the Partnership itself does not hold or exercise individual partnership interests." That response disregards the fact that the assignment of the physicians' partnership interests back to the Partnership would have facilitated the treatment of such interests as having been extinguished, and it also would have served the function of "evidenc[ing] and fully and effectively transfer[ring] the interest of the Defaulting Partner" as contemplated by this provision of the Agreement. In any case, the more fundamental problem for St. Luke's still remains—the physicians have demonstrated a

probable right to injunctive relief based on the arguments that the capital call was unauthorized, therefore there was no default, and thus there also was no basis to terminate the physician partners.

5. St. Luke's responds that a wind-up does not require liquidation of assets and sale to third parties, and that the termination of the physician partners' interests resulted in the managing partner being the sole remaining partner in the Partnership. We have explained the flaw in the reasoning that assumes an effective termination of the physician partners, but even if the managing partner had been the sole remaining partner of the Partnership, a proper attempt at winding up the business of the Partnership could have, and prudently would have, included a formal, documented transfer of assets, particularly a valuable asset such as a hospital.

have been distributed as provided in Section 13.02."

Of course, it still could have been the case that the managing partner, laboring under its misimpression that the physicians had been squeezed out of the Partnership, actually took actions to the effect that ownership of the hospital was actually transferred away from the Partnership. But there is no evidence whatsoever that actually occurred, and again the dissent has pointed to none. The only evidence presented by St. Luke's on this point had to do with administrative aspects of operating a hospital: reassignment of the "CMS provider number"; obtaining new licenses; obtaining a tax advantage by operating the hospital under auspices of a not-for-profit entity; and transferring debt incurred in the name of the Partnership to other entities affiliated with St. Luke's. We cannot infer that any of these actions indicated an actual transfer of hospital ownership from the Partnership to the managing partner, and no evidence to that effect was actually presented to the trial court. The evidence presented actually indicated the opposite, as illustrated by Koontz's description of the obstacles encountered in the effort to transfer the CMS provider number. In connection with the request for transfer of the provider number, CMS expected to receive some supporting documentation, such as a bill of sale. There was no such document, and the evidence instead showed that in order to accomplish that transfer, the managing partner had to "produce other documents" to persuade CMS that a transfer had occurred by operation of law "related to the rescission" and because the Partnership purportedly had "only one partner." As noted previously, the misunderstanding held by the managing partner about the legal effect of its attempt to terminate the physicians' partnership interests did not have the effect of extinguishing the Partnership or any ownership rights the Partnership has in the hospital.

With the two major premises of the St. Luke's arguments thus discredited, it follows that the mootness arguments simply do not correspond to the actual application for temporary injunction. A request that St. Luke's be required to reverse any of its actions predicated on termination of the physicians' partnership interests presumably would not be a moot request, but that question is not presented because no such relief was requested. The physicians did seek to enjoin "any action to terminate the Partnership Interests or ownership interest of . . . any of the Plaintiffs"—that request is not moot as the Partnership has not been actually extinguished, though St. Luke's evidently persists in a belief otherwise, and in reliance on that misunderstanding continues to take actions respecting the hospital that are adverse to the physicians' interests. The physicians further sought to enjoin actions requiring their assent under the Amended Partnership Agreement—and given the continued viability of the Partnership, those requests also are not moot. Finally, the physicians sought to enjoin any meeting of the Partnership's Governing Board without notice to their representative—again, not a moot request given the continuation of the Partnership.

The physicians had the burden of proof to establish their entitlement to the injunctive relief they sought. *See, e.g., Walling,* 863 S.W.2d at 58. In our prior decision we concluded this burden had been satisfied. *Sonwalkar,* 394 S.W.3d at 202–03. We conclude that the suggestion of intervening circumstances causing the physicians' application to become moot is unavailing. And we discern nothing else in the record of this interlocutory appeal that would support a conclusion that the requested injunction should not be granted.

## Conclusion

We reverse the order of the trial court, and we remand the cause for further proceedings to set an injunction bond and issue the appellants' requested temporary injunction.

Justice KEYES, dissenting.

EVELYN V. KEYES, Justice, dissenting.

Appellants, Dr. Shatish Patel, Dr. Hemalatha Vijayan, Dr. Subodh Sonwalkar, and Dr. Wolley Oladut (the "Physician Partners"), appeal the trial court's denial of this their renewed application for a temporary injunction seeking to enjoin appellees, St. Luke's Sugar Land Partnership, L.L.P. (the "Partnership") and St Luke's Community Development Corporation–Sugar Land (the "Managing Partner") (collectively, "St. Luke's"), from (1) treating their Class A partnership interests in the Partnership as terminated; (2) taking actions requiring the approval of partners representing 75% of the partnership interest; and (3) taking actions requiring the approval of Governing Board members representing 75% of the voting interest of the Partnership, including making a capital call. The trial court denied the application as moot on the ground that all of these actions had already occurred. The Physician Partners appealed. The majority reverses and orders the trial court to issue the injunction and to set an injunction bond.

I respectfully dissent. I would find that all actions sought to be enjoined have already occurred, such that the application is moot, and that the majority opinion and judgment are advisory. I would also find that, even if the application is not moot, the Physician Partners have not satisfied the burden of proof for obtaining a temporary injunction. I would affirm the order of the trial court denying the application for temporary injunction.

## Background

The Partnership was a general partnership created to own and operate the St. Luke's Sugar Land Hospital in Sugar Land, Texas (the "Hospital"). The Physician Partners were four of ninety-six Class A partners. Dr. Patel and Dr. Vijayan each owned four partnership units, and Dr. Sonwalkar and Dr. Oladut each owned two partnership units. The Managing Partner owned all Class B units.

In July 2007, the Partnership adopted the Amended Partnership Agreement ("the Amended Agreement"), the terms of which are at issue in the underlying litigation.

The Amended Agreement eliminated a provision in the original Partnership Agreement that Class A Units would always represent 49% of the Percentage Interest and Class B Units would always represent 51% of the Percentage Interest in the Partnership. It substituted, in its stead, a provision which stated that each partner's Percentage Interest was to be calculated by "dividing the number of Units held by the Partner by the total number [of] Units issued and outstanding among all Partners at the time, all irrespective of class." The "Current Ownership" was listed as "Managing Partner," 51% and "Class A Partners," 49%. The Amended Agreement provided that additional capital might be required to be contributed to the Partnership "only with approval of Partners holding at least seventy-five (75%) of the Partnership Interest . . . ." The Amended Agreement also stated, "Such approval is required in addition to the consent of the Governing Board required under Section 8.9(e) hereof."

Section 8.9 provided that, generally, Governing Board decisions would require the affirmative vote of Board members controlling greater than 50% of the Voting Interest of all Board members. The Managing Partner's representatives controlled 51% of the Voting Interest, and the Physician Partners' representatives controlled 49% of the Voting Interest. Certain actions, such as requiring additional capital contributions, required affirmative approval from Board members controlling at least 75% of the Voting Interest. This provision remained unchanged from the original partnership agreement.

The Amended Agreement also provided that the affirmative vote of at least 75% of the total Partnership Interest was required to approve certain major transactions, including amending the Partnership Agreement, and that "neither the individual Partners nor the Governing Board nor the Managing Partner shall have any authority to ... cause the Partnership to ... amend or otherwise change this Agreement" without "the consent of Partners holding at least seventy-five percent (75%) of the Partnership Interest."

## A. The Physician Partners' First Application for Temporary Injunction

In April 2011, the original plaintiff, Dr. Patel, sued the Partnership for breach of fiduciary duty, fraud, misrepresentation, and theft, alleging that he had been promised healthy returns by the Partnership but that the Hospital was operating at a net loss.

The next month, in May 2011, the Partnership sent a rescission offer to all of the Class A unit holders, which informed the Partners of the potential need for a reorganization and a capital call. This letter gave each recipient thirty days to elect to rescind his or her purchase of Class A units in exchange for a repayment of the purchase price plus six percent interest from the date of purchase.

Dr. Vijayan joined the suit as co-plaintiff. Drs. Patel and Vijayan then filed an application for injunction, seeking to enjoin the Partnership from taking any further action on the rescission offer, making any offer to purchase, redeem, or otherwise acquire Class A units, taking any action to alter the composition of Governing Board, or taking any action to alter the 49% to 51% ratio of Class A partners to Class B partners represented as the "Current Ownership" when the Amended Agreement was executed. The trial court granted the injunction, but later dissolved it upon St. Luke's payment of money into the court's registry, out of which any eventual judgment in favor of Drs. Patel and Vijayan could be satisfied.

## B. The Physician Partners' Second Application for Temporary Injunction

All of the ninety-six holders of Class A units accepted the rescission offer except for Drs. Patel, Vijayan, Sonwalkar, and Oladut.

The Partnership then sent a notice to all ninety-six Class A unit holders indicating the overwhelming acceptance of the rescission offer and stating that, after the buy-out of Class A units, the remaining four Class A Physician Partners' ownership interest in the Partnership was less than 15%. This number was calculated by "dividing the number of Units held by the Partner by the total number [of] Units issued and outstanding among all Partners at the time, all irrespective of class," i.e., by dividing the numbers of units held by the four remaining Class A Physician Partners by the total number of units issued and outstanding among all Partners, including the Managing Partner, after the other physicians' acceptance of the rescission offer, as provided in the Amended Agreement.

Having announced the change in percentage ownership of the Partnership Interests, the Partnership also announced the adoption of an amendment concerning the composition of its Governing Board, in which the four remaining Class A Physician Partners would have the right to elect Board members in proportion to their new percentage interest in the Partnership. At the time the Amended Agreement was executed, the Class A Unit holders had represented 49% of the "Current Ownership" of the Partnership, and the Managing Partner had represented the other 51% of the "Current Ownership." Because they represented 49% of the total ownership interest of the Partnership, the Class A unit holders had been entitled to elect seven of the fifteen members of the Governing Board under the terms of the Amended Agreement. The Partnership relied upon the changed percentage of ownership interests in further amending the Amended Agreement, drastically reducing the number of members the Physician Partners could elect due to their significantly reduced Percentage Interest.

The Physician Partners applied for a second temporary injunction seeking to enjoin the Partnership from calling a Class A unit holders meeting to elect fewer than seven representatives to the fifteen-member Governing Board. The trial court denied the injunction. The Physician Partners did not appeal this ruling.

### C. The Physician Partners' Third Application for Temporary Injunction

On September 2, 2011, after denial of the Physician Partners' second application for temporary injunction, the Governing Board sent notice of a capital call to the Physician Partners for more than $400,000 from Drs. Patel and Vijayan and for more than $200,000 from Drs. Sonwalkar and Oladut. The notice warned that if the capital call payments were not received within thirty days, the Partnership could terminate their interests. In lieu of holding a Partners' meeting, the capital call was issued by the Managing Partner, which owned a greater than 75% Partnership Interest in the Partnership after the buyout of ninety-two of the ninety-six Class A unit holders.

Shortly afterwards, Dr. Sonwalkar and Dr. Oladut joined the lawsuit. None of the four Physician Partners made any contribution in response to the capital call, while the Managing Partner contributed $24,000,000. When the Partnership sent the Physician Partners written notice of their default and offered them the opportunity to cure, they failed to do so.

On October 3, 2011, the Physician Partners filed a third application for a temporary injunction. They again sought to enjoin the Partnership from (1) terminating their Partnership Interests; (2) taking actions requiring the approval of Partners representing 75% of the total Partnership Interest, including amending the Partnership Agreement; and (3) taking actions requiring the approval of Governing Board members representing 75% of the Voting Interest, including making a capital call. The Physician Partners again contended that they owned 49% of the Partnership and of the Voting Interest, which was relevant to actions of the Governing Board, under the terms of the Amended Agreement, that the Managing Partner still had only a 51% Partnership and Voting Interest, and that they would be irreparably harmed by the termination of their Partnership Interests.

While this third application for injunctive relief was pending, the Partnership went forward with the previously planned and noticed capital call. The Partnership then notified the Physician Partners that, as of October 19, 2011, their Partnership Interests had been terminated. As a re-

sult, only the Managing Partner remained as a unit holder. Before the trial court ruled on the Physician Partners' third application for a temporary injunction, the Physician Partners informed the trial court in a supplemental brief that the Partnership had purportedly terminated their partnership interests for failure to participate in the capital call. The trial court denied injunctive relief on November 7, 2011. The Physician Partners then filed an accelerated appeal challenging this ruling in this Court. Prior to issuance of an opinion, Drs. Patel and Vijayan voluntarily moved to dismiss their appeal, leaving Drs. Sonwalkar and Oladut as the only appellants. The Physician Partners did not request temporary relief to prevent the Partnership from taking further actions pending interlocutory appeal.[1]

Because there was no longer more than one partner after the Physician Partners' partnership interests were terminated, the Partnership ceased to operate as a Partnership and became wholly owned by the Managing Partner, a non-profit entity. In order to carry out its status as a non-profit corporation and to comply with regulatory guidelines applicable to the operation of a non-profit hospital, the Managing Partner undertook certain actions that included terminating existing agreements, transferring its Medicare provider number, advising various governmental entities and agencies of the change in provider services, obtaining new accreditation, and changing a number of agreements. Finally, the property on which the Hospital was located, previously leased by the Partner-

ship, was purchased by an affiliated company of the Managing Partner.

In a published opinion issued on August 16, 2012, a panel of this Court reversed the trial court's order denying Dr. Sonwalkar's and Dr. Oladut's third application for a temporary injunction and remanded the case "for further proceedings consistent with this opinion." *Sonwalkar v. St. Luke's Sugar Land P'ship L.L.P.*, 394 S.W.3d 186, 203 (Tex.App.-Houston [1st Dist.] 2012, no pet.). The Court did not, however, instruct the trial court to enter an injunction, and it did not. The majority now orders enjoined, in response to the Physician Partners' interlocutory appeal of the denial of their subsequently filed renewed application for temporary injunction, the same actions the Physician Partners sought to enjoin in their third application for temporary injunction.

### D. The Physician Partners' Renewed Application for Temporary Injunction

On December 13, 2012, the Physician Partners filed this renewed application for temporary injunction. They again sought to enjoin the Partnership from excluding them from governance of the now-defunct Partnership, from making a capital call, and from transferring the operation or ownership of the Hospital—actions that had formed the subject of their third application for a temporary injunction and that had already transpired before the application was renewed.

Specifically, the Physician Partners sought to enjoin the Partnership, in relevant part, from (1) taking any action to

---

1. Texas Civil Practice and Remedies Code section 51.014 provides for interlocutory appeal of denial of an application for temporary injunction. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(4) (Vernon Supp.2013). It does not stay the commencement of a trial in the trial court pending resolution of the interlocutory appeal. *Id.* § 51.014(b). Pursuant to

Texas Rule of Appellate Procedure 29.3, in an interlocutory appeal, an appellate court "may make any temporary orders necessary to preserve the parties' rights until disposition of the appeal and may require appropriate security." TEX. R. APP. P. 29.3. The Physician Partners did not seek such relief in this Court.

terminate their partnership interests and (2) denying their ability to participate in a Governing Board vote as 49% Voting Interest holders, including votes on actions to (a) borrow more than $250,000 from any third party for any purpose; (b) "[s]ell, transfer, assign, dispose of, trade, exchange, quitclaim, surrender, release or abandon any Partnership property" with a value of $250,000 or more; (c) "call for any additional capital contributions"; and (d) "approve any fundamental or material change to the general business objectives and purpose of the Partnership." St. Luke's moved to dismiss the application for injunction as moot, arguing that circumstances had changed since the filing of the third application for a temporary injunction, which the Physician Partners had renewed after remand.

At the hearing on the temporary injunction, St. Luke's Episcopal Health Care System Senior Vice President David Koontz, a former member of the Board of the Partnership, testified to the actions that had already taken place, including the capital call and the termination of the Physician Partners' Partnership Interests. He also testified that St. Luke's Episcopal Health System had paid off several loans that the Partnership had taken out; that the Partnership's main asset, the Hospital, had been transferred to the Managing Partner and the Partnership had ceased operations; that the non-profit Managing Partner had taken over operation of the Hospital and the Partnership's licenses, such as the Medicare provider number; and that the Partnership no longer held any assets.

The trial court denied the Physician Partners' renewed application for temporary injunction, finding that it was moot.

The Physician Partners then filed both a notice of accelerated appeal and a petition for writ of temporary injunction, again asking this Court to reverse the trial court's denial of their application for temporary injunction and to remand the case with specific instructions to the trial court to issue a temporary injunction. A panel of this Court denied the petition for a writ of temporary injunction in July 2013 on the ground that the requested relief was not necessary to preserve this Court's jurisdiction over the interlocutory appeal. *In re Patel*, No. 01–13–00330–CV, 2013 WL 3422026, at *1 (Tex.App.-Houston [1st Dist.] July 2, 2013, orig. proceeding).

In ruling on this interlocutory appeal, the majority of this panel now reverses the trial court's denial of the application for temporary injunction, remands the case to the trial court with instructions to enter the injunction, and orders the trial court to set an injunction bond.

I agree with St. Luke's that the Physician Partners' application for temporary injunction is moot. Moreover, I believe the majority has overstepped the bounds of its interlocutory appellate jurisdiction. It has enjoined actions that have long ago taken place and no longer present a controversy as to which effective injunctive relief can be granted; it has improperly decided issues in favor of the Physician Partners relevant to the merits of the underlying litigation; and it has issued an advisory opinion effectively ordering specific performance of the Amended Agreement of the now-defunct Partnership as the majority construes its terms, thereby effectively invalidating, inter alia, the termination of the Partnership, the $24,000,000 capital call, and an array of license agreements, contracts, and regulatory filings made by St. Luke's pursuant to its understanding of the terms of the Amended Agreement that is the subject of the litigation pending in the trial court.

I see no jurisdiction in this Court to construe the Amended Agreement, decide

what its terms require, and grant relief in terms of specific performance when the proper construction of that agreement is the subject of the underlying proceeding in the trial court. I also see no reason why the Physician Partners could not be compensated in damages for any injury to their Partnership Interests they may be found to have suffered from St. Luke's alleged breach of contract, breach of fiduciary duty, fraud, and negligent misrepresentation when their claims proceed to trial. I do not believe, therefore, that the Physician Partners have satisfied the standard of proof they must meet to justify the issuance of a temporary injunction—even if their application seeking to enjoin past actions of the Partnership were not moot.

**Application for Temporary Injunction**

The decision to grant or deny a temporary injunction is within the trial court's sound discretion. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002); *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (per curiam). An appellate court must not substitute its judgment for that of the trial court unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 204. The trial court does not abuse its discretion by making a decision based on conflicting evidence. *Shor v. Pelican Oil & Gas Mgmt., LLC*, 405 S.W.3d 737, 748 (Tex.App.-Houston [1st Dist.] 2013, no pet.). The trial court abuses its discretion when it misapplies the law to established facts or when the evidence does not reasonably support the trial court's decision. *Id.; Pharaoh Oil & Gas, Inc. v. Ranchero Esperanza, Ltd.*, 343 S.W.3d 875, 881 (Tex.App.-El Paso 2011, no pet.).

In reviewing an order granting or denying an application for temporary injunction, we review the evidence submitted to the trial court in the light most favorable to its ruing, drawing all legitimate inferences from the evidence, and deferring to the trial court's resolution of conflicting evidence. *INEOS Grp. Ltd. v. Chevron Phillips Chem. Co.*, 312 S.W.3d 843, 848 (Tex.App.-Houston [1st Dist.] 2009, no pet.).

**A. Mootness**

The Physician Partners contend that their application for a temporary injunction is not moot and that this Court may grant them the relief the trial court refused to grant when it denied their application. I disagree.

"A case becomes moot if at any stage there ceases to be an actual controversy between the parties." *Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex.1999). An issue may be moot if it becomes impossible for the court to grant effectual relief. *In re H & R Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 900 (Tex. App.-Houston [14th Dist.] 2008, orig. proceeding); *see Rawlings v. Gonzalez*, 407 S.W.3d 420, 428 (Tex.App.-Dallas 2013, no pet.) (holding that trial court could not enjoin actions that had already occurred); *see also Williams v. Lara*, 52 S.W.3d 171, 184 (Tex.2001) (holding that for plaintiff to have standing, controversy must exist between parties at every stage of legal proceedings, including appeal; if case becomes moot, parties lose standing to maintain their claims).

"Appellate courts are prohibited from deciding moot controversies." *Jones*, 1 S.W.3d at 86. "When a temporary injunction becomes inoperative due to a change in status of the parties or the passage of time, the issue of its validity is also moot," and an appellate court's opinion about the temporary injunction's validity under such circumstances is an advisory opinion. *Id.* The mootness doctrine prevents courts from rendering advisory opinions, which

lie outside the jurisdiction conferred on the courts by the Texas Constitution. *See id.; In re H & R Block*, 262 S.W.3d at 900; *see also Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex.2000) (per curiam) (holding that appeal of order became moot when order was complied with and court of appeals was notified and that court of appeals erred in issuing advisory opinion on merits of appeal).

I agree with the trial court that the actions the Physician Partners seek to enjoin all occurred before they filed their renewed application for temporary injunction and that their request for a temporary injunction enjoining these actions is moot. There is no evidence of a continuing controversy of the type the Physician Partners seek to prospectively enjoin. There is pending litigation in the trial court. And there may be evidence in those proceedings of St. Luke's breach of the Amended Agreement. There may also be evidence of breach of fiduciary duty, fraud, or negligent misrepresentation on the part of St. Luke's sufficient to convince a jury that the Physician Partners' claims in the underlying litigation have merit and that they are entitled to a judgment against St. Luke's. But those claims are not before this Court; they are before the trial court. And there is *no* evidence that the controversy the Physician Partners seek to enjoin is ongoing.

There is no evidence that the now-defunct Partnership is (1) taking any action to terminate the Physician Partners' Partnership Interests; (2) borrowing more than $250,000 from any third party for any purpose without the Physician Partners' ability to participate in a Governing Board vote to approve that action as 49% Voting Interest holders; (3) selling, transferring, assigning, disposing of, trading, exchanging, quit claiming, surrendering, releasing or abandoning any Partnership Property with a value of $250,000 or more; (4) calling for any additional capital contributions; or (5) approving any fundamental or material change to the general business objectives and purpose of the Partnership. Instead, St. Luke's presented evidence that the Partnership has already terminated the Physician Partners' Partnership Interests and that the Partnership itself has transferred its assets, including licenses and other documentation essential to operating the Hospital, to the Managing Partner, the sole remaining Partner after the termination of the Physician Partners' interests, and has ceased operating the Hospital.

The Physician Partners argue that their request for a temporary injunction is nevertheless not moot because the Partnership altered the status quo before "the judicial process [could] determine whether a temporary injunction is warranted." They rely on *Intercontinental Terminals Co., L.L.C. v. Vopak North America, Inc.*, 354 S.W.3d 887, 892–93 (Tex.App.-Houston [1st Dist.] 2011, no pet.) (holding that trial court could have reasonably concluded that injunction balanced parties' interests in status quo when it limited use of track to seventy railcars per day, although appellant had argued injunction order impermissibly altered status quo because it had already limited number of railcars to thirty-five).

The Physician Partners' argument regarding the status quo is misplaced. The judicial process determined that an injunction was not warranted when the trial court denied the Physician Partners' third application for a temporary injunction in November 2011, and the Physician Partners failed to seek temporary relief when they appealed that denial to this Court. Even at that time, many of the actions complained of by the Physician Partners in this renewed application for temporary in-

junction had already taken place—including the capital call, the Partnership's denial of the Physician Partners' management rights, and the termination of the Physician Partners' Partnership Interests. Subsequently, the other actions the Physician Partners effectively seek to enjoin—such as the transfer of Partnership assets—occurred before the Physician Partners filed, and the trial court denied, this renewed application for temporary injunction.

An application for injunction invokes a court's equitable jurisdiction. *In re Gamble*, 71 S.W.3d 313, 317 (Tex.2002); *NMTC Corp. v. Conarroe*, 99 S.W.3d 865, 868 (Tex.App.-Beaumont 2003, no pet.). Equity "aids the diligent and not those who slumber on their rights." *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex.2010) (per curiam) (quoting *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex.1993)). In this case, the Physician Partners were provided notice on several occasions that the Partnership was planning to terminate their Partnership Interests for their failure to contribute in response to the capital call. On October 19, 2011, before the trial court ruled on the third application for injunctive relief, the Partnership sent the Physician Partners a letter informing them that their Partnership Interests had been terminated. Yet, even with several letters informing them that the Partnership was planning to terminate their Partnership Interests and even though the Partnership had sent a notice informing them that it had actually terminated their Partnership

Interests, the Physician Partners did not seek a stay when they appealed the trial court's denial of their request for an injunction in November 2011. *See* Tex. R.App. P. 29.3 (providing, in interlocutory appeals, that appellate courts may "make any temporary orders necessary to preserve the parties' rights").

Thus, unlike in *Intercontinental Terminals* in which the injunction entered by the trial court could have preserved the status quo, *see Intercontinental Terminals Co.*, 354 S.W.3d at 893, in this case the trial court could have reasonably concluded that the status quo had already been altered and the actions the injunction sought to preclude were already accomplished. *See Day v. First City Nat'l Bank of Houston*, 654 S.W.2d 794, 795 (Tex.App.-Houston [14th Dist.] 1983, no writ) ("Since the action sought to be enjoined has already been performed, we are no longer capable of ruling on the matter before the Court."). All of these actions took place before the renewed application for temporary injunction was even filed, much less before the trial court denied it as moot.

I would hold that the trial court did not abuse its discretion by denying the Physician Partners' renewed application for a temporary injunction.[2] *See Rawlings*, 407 S.W.3d at 428 (holding that trial court could not enjoin actions that had already occurred); *In re H & R Block*, 262 S.W.3d at 900 (stating that issue may be moot if it becomes impossible for court to grant effectual relief). I agree, therefore, with the trial court that the Physician Partners'

---

**2.** The Physician Partners also argue that the appeal of the denial of the temporary injunction is not moot because several of the actions already accomplished, such as termination of their partnership interests, were ultra vires actions under the Amended Agreement. Whether or not the Partnership was authorized to terminate the Physician Partners' interests and transfer the Partnership without their participation in a Governing Board vote, this Court has no jurisdiction to render advisory opinions when all of the requested relief has been foreclosed by a change in circumstances. *See Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex.1993) ("Dismissal for mootness is not a ruling on the merits.").

application for temporary injunction is moot, and I would affirm the trial court's order dismissing the application.

### B. Interlocutory Appellate Jurisdiction Over Temporary Injunction Rulings

Because I believe the controversy with respect to which the majority writes is moot, I also believe that this Court is without jurisdiction to grant the relief sought by the Physician Partners and that the majority opinion and judgment are advisory. *See Jones,* 1 S.W.3d at 86 (prohibiting rendition of advisory opinions); *see also Valley Baptist Med. Ctr.,* 33 S.W.3d at 822 (vacating court of appeals' judgment and opinion on moot controversy as advisory and dismissing cause as moot).

The interlocutory appeal statute is strictly construed as an exception to the general rule that only final judgments are appealable. *LTTS Charter Sch., Inc. v. C2 Constr., Inc.,* 342 S.W.3d 73, 76 (Tex.2011); *see Tex. A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 840 (Tex.2007) ("Appellate courts have jurisdiction to consider immediate appeals of interlocutory orders only if a statute explicitly provides such jurisdiction."). Interlocutory appellate jurisdiction over denial of a temporary injunction accorded by statute is restricted to determining whether the trial court has overstepped the bounds of its discretion in ruling on the application for temporary injunction, and it does not extend to determining the underlying case on its merits. *See Davis v. Huey,* 571 S.W.2d 859, 861–62 (Tex.1978); *Shor,* 405 S.W.3d at 748 (holding same); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (Vernon Supp. 2013) (granting right to appeal from interlocutory order of district court that "grants or refuses a temporary injunction").

The majority, however, disagrees that this application for temporary injunction is moot, and, therefore, it assesses and determines issues related to the merits of the underlying litigation in order to determine whether the trial court overstepped the bounds of its discretion in ruling on the Physician Partners' application for temporary injunction, in contradiction of established case law holding that interlocutory appellate jurisdiction does *not* extend to determining the merits of the underlying case. *See Davis,* 571 S.W.2d at 861–62; *Shor,* 405 S.W.3d at 748. The majority analyzes the language of the underlying agreement and notes that (1) the previous panel's opinion "already explained that the doctors demonstrated a probable right to injunctive relief to prevent the Partnership from squeezing out the physicians by means of the capital call without approval by 75% of the Voting Interest as required by the Amended Partnership Agreement" and (2) "[e]ven assuming that the capital call was legitimate, and even assuming the physician partners defaulted by failing to respond to the capital call, the Partnership still failed to effectively terminate the physicians' partnership interests under the Amended Partnership Agreement ...." Op. at 421 (citing *Sonwalkar,* 394 S.W.3d at 202).

The majority further concludes that the Physician Partners were not in default and that their Partnership Interests were not actually terminated. Op. at 426. It determines that the Partnership has not completed its winding-up process and has not terminated. Op. at 422. It also concludes, without reference to legal authority (and noting the absence of evidence in the interlocutory appellate record) that "the misunderstanding held by the managing partner about the legal effect of its attempt to terminate the physicians' partnership interests did not have the effect of extinguishing the Partnership or any ownership rights the Partnership has in the hospital." Op. at 423. Finally, it con-

cludes "that the suggestion of intervening circumstances causing the physicians' application to become moot is unavailing" and that it finds no reason not to grant the requested injunction. Op. at 423.

Thus, the majority ultimately reverses the order of the trial court and remands the cause "for further proceedings to set an injunction bond and issue the [Physician Partners'] requested temporary injunction." Op. at 424. In short, under the guise of deciding whether the trial court abused its discretion in denying the Physician Partners' renewed application for a temporary injunction as moot, the majority issues an advisory opinion, preemptively construing the terms of the Amended Agreement and partially determining the merits of the underlying litigation pending in the trial court.

I find no jurisdiction in this Court to construe the terms of the contract at issue in the underlying litigation for breach of the Amended Agreement, breach of fiduciary duty, fraud, and negligent misrepresentation or to decide the merits of the case. *See Davis*, 571 S.W.2d at 861–62 (holding jurisdiction of appellate court on interlocutory appeal of temporary injunction strictly limited to ruling on application and merits cannot be reached); *see also Williams*, 52 S.W.3d at 184 ("If a case becomes moot, the parties lose standing to maintain their claims."); *Valley Baptist Med. Ctr.*, 33 S.W.3d at 822 (vacating court of appeals' judgment and opinion on moot controversy as advisory); *Jones*, 1 S.W.3d at 86 (holding that appellate courts are prohibited from deciding moot controversies and opinion about validity of trial

court's temporary injunction ruling after temporary injunction becomes inoperative is advisory); *In re H & R Block*, 262 S.W.3d at 900 (stating that issue may be moot if it becomes impossible for court to grant effectual relief). Therefore, the opinion of this Court granting that relief based on its opinion as to whether St. Luke's actions *should* have taken place is, at this point, advisory.[3] *See Jones*, 1 S.W.3d at 86 (stating that Texas Constitution prohibits rendition of advisory opinions). I would determine this interlocutory appeal solely on mootness grounds.

C. **Proof of Entitlement to Temporary Injunction**

Even if I were to agree with the majority that the Physician Partners' application for a temporary injunction was not moot, however, I would affirm the trial court's order denying the injunction because I do not think the Physician Partners have satisfied their burden of showing their entitlement to a temporary injunction.

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204; *Walling*, 863 S.W.2d at 57. A temporary injunction is an extraordinary remedy that does not issue as a matter of right. *Butnaru*, 84 S.W.3d at 204. To obtain a temporary injunction, an applicant must plead and prove "(1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Id.* "An injury is irreparable if the injured party cannot be adequately compensated

---

**3.** The Physician Partners did not ask the trial court to unwind, to the extent possible, the actions taken by the Partnership that they allege abrogated their rights and that the majority opinion and judgment nevertheless effectively grants. Nor have they standing to

make such a request of this Court in this interlocutory appeal. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex.2001) ("If a case becomes moot, the parties lose standing to maintain their claims.").

in damages or if the damages cannot be measured by any certain pecuniary standard." *Id.*

The Physician Partners' causes of action pleaded against St. Luke's for breach of contract, breach of fiduciary duty, fraud, and negligent misrepresentation have been pending in the trial court since 2011, during which time the Physician Partners have repeatedly delayed resolution of the litigation by filing serial applications for a temporary injunction seeking to enjoin past actions of St. Luke's. I see no legal right of the Physician Partners at this time to enjoin the Partnership from (1) taking any action to terminate their partnership interests, which were terminated in 2011 or (2) barring them from participating in Governing Board votes of the now-defunct Partnership as 49% Voting Interest holders with respect to actions to (a) borrow more than $250,000 from any third party for any purpose; (b) "sell, transfer, assign, dispose of, trade, exchange, quitclaim, surrender, release or abandon any Partnership property" with a value of $250,000 or more; (c) "call for any additional capital contributions"; or (d) "approve any fundamental or material change to the general business objectives and purpose of the Partnership." Again, these actions have already taken place.

Moreover, any right the Physician Partners might have had to stop any of these actions in the past would have depended upon the construction of the disputed terms of the Amended Agreement in their favor—the principal issue pending in the trial court. And, while the majority construes those terms in the Physician Partners' favor and preemptively decides issues relevant to the merits of the underlying case, I do not see that the Physician Partners have presented any legal argument, authority, or evidentiary support for their construction of the Amended Agreement in this Court that would enable us to determine their rights in their favor for purposes of an injunction, that is, to determine that they are, or were, probably entitled to a judgment in the underlying litigation that, on balance, would justify maintaining the status quo ante until the trial could be had.

Even if I were to find support in the interlocutory appellate record for maintaining the status quo ante until the Physician Partners' claims in the trial court could be decided—claims that St. Luke's violated its fiduciary duty to the Physician Partners by failing to keep the Partnership's alleged promise to make money; that St. Luke's made misrepresentations to the Physician Partners and defrauded them; and that St. Luke's breached its fiduciary duties and breached the Amended Agreement by counting the Physician Partners' percentage interest in ownership of the Partnership at less than 49% after the buyout of the other Class A unit holders by St. Luke's; improperly further amended the Amended Agreement after the buyout and violated their rights as Partnership Interest Owners by not allowing them the opportunity to appoint seven members to the Governing Board; improperly issued the capital call to which they failed to respond; improperly terminated their Partnership Interests; and then improperly terminated the Partnership and transferred its assets—I still would find no reason to believe that the Physician Partners could not be adequately compensated for those actions by an award of damages, as is customary in breach of contract, breach of fiduciary duty, fraud, and negligent misrepresentation cases. *See, e.g., N. Cypress Med. Ctr. Operating Co. v. St. Laurent,* 296 S.W.3d 171, 176 (Tex.App.-Houston [14th Dist.] 2009, no pet.) (holding that remedy on appeal was adequate for termination of ownership interest of physician who owned

shares in limited partnership that owned and maintained hospital, but did not have right to manage or control partnership's operation, business, or activities, where physician's loss was "only his proportionate share in the partnership's net income and any future distributions," both of which "represent an interest in *money*") (emphasis in original).

For those same reasons, I am unable to conclude that the Physician Partners will suffer the required "probable, imminent, and irreparable injury in the interim" between this Court's action on their renewed application for temporary injunction and trial on the merits of their claims, as required to overturn an order denying a temporary injunction. *See Butnaru,* 84 S.W.3d at 204 ("An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard.").

### Conclusion

Because the trial court was presented with adequate evidence that the actions that the Physician Partners sought to enjoin had already occurred, I would hold that it did not abuse its discretion in denying their application for a temporary injunction. I would affirm the order of the trial court denying the Physician Partners' renewed application for a temporary injunction as moot.