COURT OF APPEALS FOR THE
FIRST DISTRICT OF TEXAS AT HOUSTON



ORDER DENYING ADDITIONAL SECURITY

Appellate case name:     Shatish Patel, M.D., Hemalatha Vijayan, M.D., Subodh Sonwalkar, M.D., Wolley Oladut M.D. v. St. Luke's Sugar Land Partnership, L.L.P. and St. Luke's Community Development Corporation-Sugar Land

Appellate case number:   01-13-00273-CV

Trial court case number:  2011-24016

Trial court:             152nd District Court of Harris County

On December 13, 2013, this court granted temporary relief pending the resolution of the motions for rehearing and reconsideration en banc. The appellees were ordered to refrain from:

　　a. Taking any action to terminate the Partnership Interests or ownership interest of Shatish Patel, M.D., Hemalatha Vijayan, M.D., Subodh Sonwalkar, M.D., and Wolley Oladut, M.D.

　　b. Except pursuant to a vote of the partners where Class A Unit holders have the ability to vote, collectively, 49% of the partnership interest, taking any action identified in Paragraph 8.03(h) of the Amended Partnership Agreement, including actions to:

　　　　i.　Reorganize the Partnership;

　　　　ii.　Take any action in contravention of the Amended Partnership Agreement;

1

iii. Make an assignment for the benefit of creditors of the Partnership or file a voluntary petition under the federal Bankruptcy Code or any state insolvency law;

iv. Confess any judgment against the Partnership; or

v. Amend or otherwise change the Amended and Restated Partnership Agreement.

c. Except pursuant to a vote of the Governing Board that includes representatives of Class A Unit holders who are permitted, collectively, to vote 49% of the Voting Interest, taking any action identified in Paragraphs 8.09(a)–(f) of the Amended Partnership Agreement, including actions to:

i. Issue new Units, admit new partners, or substitute partners in the Partnership;

ii. Borrow money in an amount exceeding $250,000 from any third party for any purpose;

iii. Sell, transfer, assign, dispose of, trade, exchange, quitclaim, surrender, release or abandon any Partnership property or interests therein other than in an amount less than $250,000;

iv. Purchase any real property or make, execute, or deliver any deed or long-term ground lease for any real property;

v. Require or call for any additional capital contributions by the partners or approve the amounts and proportions of such additional capital contributions; or

vi. Impose or approve any fundamental or material change to the general business objectives and purpose of the Partnership.

d. Calling a Meeting of Governing Board without providing notice to the Class A Governing Board representatives elected by Class A Unit holders.

In summary, the appellees were ordered not to take any affirmative action to: (a) terminate the appellants' ownership interests in the Partnership, (b) take certain specified actions without authorization by a vote that includes the appellants, or (c) call a meeting of the Governing Board without notice to the appellants. The appellants were required to provide security in the amount of $10,000, subject to any further showing the appellees might make to justify a greater amount.

The appellees have now moved this court to require additional security. For the reasons stated below, that motion is **DENIED**.

The appellees have argued that this court's December 13, 2013 order granting temporary relief is "improper" for the following reasons:

> (1) the actions the Order purports to restrain already occurred; (2) attempted compliance with the Order cannot be accomplished by St. Luke's unilaterally and will require St. Luke's to be in violation of federal and state law; and (3) the amount of the bond set by the Order—$10,000—is grossly inadequate to protect St. Luke's.[1]

The arguments against the underlying validity of the order include assertions about the effects of the order which are also assumed for the purposes of appellees' request for additional security. Accordingly these arguments require consideration in the context of deciding the motion for additional security.

*First*, the appellees' contention that "the actions the Order purports to restrain already occurred" was the basis for their mootness argument presented in the trial court and rejected on interlocutory appeal by the panel majority, for reasons already explained in detail. *See Patel v. St. Luke's Sugar Land P'ship, L.L.P.*, No. 01-13-00273-CV, 2013 WL 5947500, at *3–*5 (Tex. App.—Houston [1st Dist.] Nov. 7, 2013, no. pet. h.). The appellees' motion for en banc reconsideration has been denied. Furthermore, their argument that injunctive relief is moot because the prohibited actions have "already occurred" is fundamentally inconsistent with their argument that prospective injunctive relief will result in dire consequences justifying security in the tens of millions of dollars.

---

[1] Motion for En Banc Reconsideration of Order Granting Temporary Relief, at 2

3

*Second*, the appellees contend that "attempted compliance with the Order cannot be accomplished by St. Luke's unilaterally." But the temporary relief requested by the appellants and temporarily granted by this court requires no affirmative action by the appellees whatsoever—the temporary order by its express temporary terms is entirely prophylactic (i.e. the appellees were ordered "to refrain from" taking specified actions in the future). As for the contention that "attempted compliance with the Order cannot be accomplished by St. Luke's unilaterally and *will* require St. Luke's to be in violation of federal and state law,"[2] the legal argument contained in the motion only suggests that "[a]ttempted compliance with the Court's December 13th order granting temporary relief puts St. Luke's *at risk* of violating federal and state law."[3] Accordingly, no collateral legal consequences have been shown to be likely, but to the extent that upon final resolution of this case there could be potential legal ramifications resulting from the appellees' unilateral conduct whereby they "in good faith undertook numerous actions to reorganize and restructure the operation of the Hospital,"[4] those consequences do not in any way alter the analysis that led this court to conclude that that the appellant physicians had proved their entitlement to temporary injunctive relief pending a final resolution of this dispute.[5] Granting additional security as a

---

[2]     Motion for En Banc Reconsideration of Order Granting Temporary Relief, at 2 (emphasis supplied).

[3]     *Id*. at 7 (emphasis supplied); *see also id*. ("Attempted compliance with the Court's December 13th order granting temporary relief *could* put St. Luke's in violation of federal and state law and *possibly* require the Hospital to suspend operations while seeking an advisory opinion on whether returning the Hospital to for-profit status with physician ownership would violate federal law." (Emphasis supplied)); *id*. ("Payment of funds or granting of interests in violation of these statutes *could* result in fines, incarceration and/or exclusion from government programs." (Emphasis supplied)).

[4]     *Id*. at 4. These actions included representations that the Partnership had been dissolved, that all Partnership assets were "vested automatically with the St. Luke's Community Development Corporation-Sugar Land," and that the Partnership would be wound-up and formally dissolved. *See id*., App. D (Medicare Enrollment Application, cover letter, and accompanying "official 'Notice'").

[5]     In *Sonwalkar v. St. Luke's Sugar Land P'ship, L.L.P.*, 394 S.W.3d 186 (Tex. App.—Houston [1st Dist.] 2012, no pet.), we summarized our conclusions as follows:

condition of temporary relief at this interlocutory stage of proceedings would do nothing to alleviate appellees' professed concerns about potential violations of federal or state law.

*Third,* appellees contend that "the amount of the bond set by the Order—$10,000—is grossly inadequate to protect St. Luke's." The motion's arguments and evidence fail to provide any basis for increasing the amount of security to any particular amount in excess of $10,000. Appellees' complaints that $10,000 is inadequate primarily relate to their predictions of consequences that could result if the physician appellants ultimately prevail in their lawsuit[6]—they are not

---

> We . . . determined a probable right to relief because the capital call was disallowed under the Amended Partnership Agreement due to the lack of approval by the 75% supermajority of the total Voting Interest required for such action. Because the capital call was disallowed, Sonwalkar's and Oladut's interests could not be terminated for failure to pay the capital call.
>
> We conclude that Sonwalkar and Oladut pleaded and proved that under the current version of the Amended Partnership Agreement they had a right to a temporary injunction to enjoin the termination of their partnership interests, and we further conclude that the trial court erred by denying that relief.

*Sonwalkar*, 394 S.W.3d at 203.

[6] Appellees suggest, without supporting legal argument, that if the appellants ultimately prevail, over $100 million in "working capital contributions from St. Luke's Health System to the Sugar Land Hospital . . . would have to be re-established as a debt of the Partnership owed to the St. Luke's Health System." Motion for En Banc Reconsideration of Order Granting Temporary Relief, at 14. The temporary injunctive relief requested by the appellants does not require the appellees to take any immediate action in that regard pending resolution of this dispute, and neither does the temporary relief granted by this court. Accordingly, the appellees are not exposed "to enormous financial liability to carry the water for the Physician Partners' share of these debts" *as a result of* the grant of temporary relief.

5

consequences that have any demonstrated likelihood of being sustained *as a result of temporary relief*, *see DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 686 (Tex. 1990), and before the expiration of this court's plenary power. In short, the appellees' arguments treat the temporary relief granted to partially preserve the status quo as if it carried all of the consequences of a final adjudication on the merits. Such arguments misconstrue the terms of this court's temporary order, which is solely prophylactic, and the effect of the order, which is only temporary and not a final resolution of the merits.

*Finally*, Appellees suggest that "[t]o the extent that this Court would find it useful, it should request that the trial court hold an evidentiary hearing and make findings and recommendations on the appropriate amount of security." That would not be useful in this case because this court is empowered and fully capable of evaluating the arguments and evidence submitted in support of appellees' motion, *see* TEX. R. APP. P. 29; instead, deferring the matter to the trial court would unnecessarily prolong and further delay the ultimate resolution of this case.

Accordingly, the motion for additional security is **DENIED**.

---

Appellees also suggest that they are "*at risk* of being required to disgorge all Medicare PPS reimbursements it received for the Sugar Land Hospital since it was converted to a non-physician owned Hospital and operated by St. Luke's CDC-SL at the end of 2011." *Id.* at 15 (emphasis supplied). As authority, the appellees reference 42 C.F.R. § 424.535(a)(4), which provides that the Centers for Medicare & Medicaid Services (CMS) "may revoke a currently enrolled provider or supplier's Medicare billing privileges and any corresponding provider agreement or supplier agreement" in the event that "[t]he provider or supplier certified as 'true' misleading or false information on the enrollment application to be enrolled or maintain enrollment in the Medicare program." However, the appellees also note that they dispute that they provided false information, and they give no reason to believe that CMS is likely to take such actions based on a temporary order issued while the matter is being litigated.

Finally, appellees suggest that if their actions are ultimately judged to have been ineffective to terminate the appellant physicians as partners, the Partnership may be liable for millions of dollars of unpaid taxes. But again, there is no suggestion that any taxing authority is going to collect such taxes before this case is finally resolved.

It is so **ORDERED**.


Judge's signature: /s/ Michael Massengale
                          Acting individually, TEX. R. APP. P. 10.4(a)


Date:  January 27, 2014