**Opinion issued April 30, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-23-00573-CV**

———————————

**RIGHT-WAY SAND CO. A/K/A RIGHT WAY SAND, INC., RPRS INVESTMENTS, LTD., AND ADLOY, LLC, Appellants**

**V.**

**SOUTH TEXAS PIPELINES LLC, Appellee**

**On Appeal from the County Civil Court at Law No. 2**
**Harris County, Texas**
**Trial Court Case No. 1162308**

## MEMORANDUM OPINION

Texas law permits private entities that are "common carriers" to exercise the right and power of eminent domain, or condemnation. *See* TEX. NAT. RES. CODE § 111.019(a); TEX. BUS. ORGS. CODE § 2.105. In this case, appellee South Texas Pipelines LLC ("STX") sued the appellants, Right-Way Sand Co., a/k/a Right Way

Sand, Inc., RPRS Investments, Ltd., and Adloy, LLC (collectively, "appellants" or "landowners"), to exercise a statutory power of eminent domain in connection with the construction of a new pipeline. STX alleged that the pipeline would be a common carrier of polymer grade propylene ("PGP"), and it sought an easement over appellants' property for the pipeline.

In the trial court, the appellants filed a plea to the jurisdiction, in which they argued that STX had not satisfied the statutory requirements for exercising the power of eminent domain. The appellants also moved for a temporary and permanent injunction. In response to the plea to the jurisdiction, STX filed a traditional and no-evidence motion for partial summary judgment on the question of whether it had satisfied the statutory requirements for exercising the power of eminent domain.

The trial court considered the motions, the plea to the jurisdiction and responses, and the request for injunction. The court granted partial summary judgment in favor of STX, and it denied the appellants' plea to the jurisdiction and request for injunction. The appellants filed this interlocutory appeal from the order denying their request for injunctive relief.

The appellants argue that the trial court erred in its determination that STX is a common carrier and that the court abused its discretion by denying their request for an injunction. STX asserts that it satisfies the statutory requirements for

2

exercising the power of eminent domain, and, therefore, the trial court did not abuse its discretion by denying the request for an injunction. STX has also filed a motion to dismiss this appeal, arguing that it is an improper attempt to seek interlocutory review of the trial court's partial summary judgment, which is not an appealable interlocutory order.

We deny the motion to dismiss. Because we conclude that the appellants did not demonstrate their entitlement to a temporary injunction, we hold that the trial court did not abuse its discretion by denying injunctive relief. We affirm the trial court's order.

**Background**

STX is a wholly-owned subsidiary of Enterprise Products Partners L.P. ("Enterprise"). The appellants in this case are the corporate owners of adjacent properties, where STX wanted to situate a new pipeline to carry PGP from Enterprise's Mont Belvieu facility in Harris County to another Enterprise facility. In December 2020, STX filed original petitions for condemnation against each of the appellants. The appellants have common ownership and representation, and the cases were later consolidated in the trial court.

STX alleged that it was expanding its "common carrier pipeline system" by adding a "new common carrier pipeline" for transporting "liquefied mineral derived from oil and, or gas through refining, processing or other methods, and

3

including without limitation . . . propylene . . . or mixtures [of hydrocarbons] . . . .

STX alleged that the new pipeline would pass "on, over, across and through" Chambers and Harris Counties." STX alleged that the new pipeline would transport hydrocarbons "owned by others for a fee on, over, across, and through" Chambers and Harris counties. It also said that "[s]hippers on the [new pipeline] will retain title to the [hydrocarbons] in the [new pipeline] and will pay [STX] a transportation fee." Finally, STX alleged:

> [STX], as the owner[] of the Pipeline[] [is a] common carrier[] as defined in the Texas Business Organizations Code, the Texas Natural Resources Code, and the common law, and as such, ha[s] the right and power, in either and, or both capacities, to enter on, condemn, and appropriate land, rights-of-way, easements, and other property of any person or corporation as may be necessary for the construction, maintenance, or operation of the Pipeline[].

The appellants answered with a general denial and a plea to the jurisdiction. They argued that the trial court lacked jurisdiction because STX had no right to condemn, there was no public necessity for the project, the project was not for a public purpose, STX was not a common carrier, and STX could not condemn for the product to be transported in the pipelines.

In response to the plea to the jurisdiction, STX filed a combined traditional and no-evidence motion for summary judgment. STX asserted that it was entitled to exercise the power of eminent domain as a matter of law and that the only issue

4

to be resolved was the amount of compensation.[1] Relying on a Texas Supreme

Court opinion, STX argued that it was a common carrier because the product to be

transported in the new pipeline, PGP, was an oil product for the purpose of section

2.105 of the Business Organizations Code.[2] STX also argued that it was entitled to

---

[1] STX attached the following summary-judgment evidence to its motion:

- An affidavit from Thomas McNeely, who was, among other things, the custodian of the records of STX;

- Texas Railroad Commission permit applications and pipeline operating permits, which were issued to Enterprise Products, as operator, ("T-4 permits"), and which show the new pipeline and indicate that the pipeline is a common carrier;

- An assignment of an existing transportation services agreement ("TSA") between Equistar Chemicals, LP ("Equistar") and Enterprise Products Operating LLC ("EPO"), a company affiliated with STX but not the actual TSA;

- A tariff for intrastate transportation of propylene from Mont Belvieu, Texas to Webster, Texas, filed on July 1, 2022;

- A printout from the Texas Comptroller's Online Eminent Domain Database stating that STX "has reported to the Comptroller that it possesses eminent domain authority" under several statutes including the Texas Business Organizations Code section 2.105 and The Texas Natural Resources Code section 111.002; and

- STX's "Second Amended Written Consent of the Board of Directors in Lieu of an Organizational Meeting," in which the board of directors "determined that a public use and purpose" as well as "a necessity" exist for the "acquisition, by acquire by negotiation or condemnation" easements or other property interests in the appellants' properties for the new pipeline.

[2] *See Hlavinka v. HSC Pipeline P'ship, LLC*, 650 S.W.3d 483, 488 (Tex. 2022) (holding that Texas Business Organizations Code section 2.105 "grants common-carrier eminent domain authority for the construction and use of a polymer-grade propylene pipeline"). To show that the pipeline would serve the public, STX relied

a no-evidence summary judgment because the landowners had no evidence to support a possible affirmative defense that STX's determinations of public use and necessity were arbitrary and capricious, an abuse of discretion, or fraudulent.

On March 27, 2023, the appellants filed a supplemental plea to the jurisdiction and, for the first time in the litigation, an application for a temporary and a permanent injunction.

Regarding the supplemental plea, the appellants again argued that the PGP to be transported in the new pipeline was not an oil product. They maintained that, while PGP can be produced by processing refinery grade propylene, which itself is a product of crude oil, it can also be produced by other means, like the dehydrogenation of propane. They argued that the propane used in the dehydrogenation process could come from a refinery, as a product of crude oil, or it could come from a natural gas well. They contended that the PGP to be transported by the new pipeline would come from dehydrogenation of propane that might have come from a natural gas well as opposed to being a byproduct of oil refining. Thus, they argued that the PGP to be transported was not among the

on the planned use of the new pipeline to show that shipping of PGP belonging to an unaffiliated company, Equistar, would account for 27% of pipeline capacity under an existing TSA, with an additional 35% of pipeline capacity to be used by uncommitted entities, and 49% of pipeline capacity to be used by companies affiliated with STX. Finally, it asserted that necessity for the new pipeline was presumed absent pleading and proof of fraud, bad faith, abuse of discretion, or arbitrary and capricious action. STX also argued that it was a common carrier under section 111.002(1) of the Natural Resources Code because PGP is derived from crude petroleum.

substances for which section 2.105 of the Business Organizations Code authorizes the exercise of the power of eminent domain.[3]

Regarding the request for injunctive relief, the appellants requested that the trial court issue an injunction against STX in the event that it granted the plea to the jurisdiction and dismissed the appeal.

. . . .

27.     [STX] should be enjoined from any work on the site, transporting any product on or over the site, and it should be required to remove any equipment or pipeline on the site. If Plaintiff has no right to take, and the case is dismissed, then an injunction is proper and should issue.

28.     [Appellants] ask this Court to enter as quickly and timely as possible a Temporary Injunction ("TI") and after a trial on the merits a Permanent Injunction ("PI") to restrain [STX] from further use and trespass on [appellants'] property.

29.     Permanent Relief: [appellants] have plead for permanent relief in the form of dismissal based on lack of jurisdiction.

30.     Probable Right to Relief: [Appellants] have shown a probable right of recovery as [STX] has no right to take and thus is improperly on and using [appellants'] property.

31.     Probable Injury: Unless [STX] is enjoined, [appellants] will suffer probable injury and continue to suffer clear, immediate and irreparable injury/harm as a result of unlawful and tortious conduct. There is no adequate remedy at law for the use and damage at issue, and to allow Plaintiff to continue to ignore its legal obligations and [appellants'] legal rights (and profit by doing the same) is improper. [STX] does not have the right to take.

---

[3]     The appellants also argued that the PGP in question would not be crude petroleum under in the meaning of section 111.002(1) of the Natural Resources Code.

32.   Tex. Civ. Prac. & Rem. Code 65.011(5): Additionally an applicant seeking to prevent irreparable injury to real or personal property does not have to prove or establish there is no adequate remedy at law.

33.   No Adequate Remedy and Irreparable Damage Satisfied as a Matter of Law: The requirements of no adequate remedy and irreparable damage are satisfied as Plaintiff does not have a right to take, is trespassing and HSC's [STX's] current use invades [appellants'] right of possession, use and enjoyment, and/or is trespass which is repeating and continuing.

34.   No Injury to Defendant [Appellants]: Greater injury will be inflicted on [appellants] by t the denial of injunctive relief than would be inflicted on Plaintiff by granting such relief as by granting the relief requested, as Plaintiff has no right to use and enjoy the [appellants'] property.

35.   Injunctive Relief Requested: Defendants seek an injunction as follows:

a)   STX and its agents and affiliates are restrained from the use of, invading and coming into physical contact with or damaging [appellants'] property including but not limited to the transportation of product through the [STX] pipeline.

b)   STX and its agents and affiliates shall remove all pipelines and any other equipment from [appellants'] property at HSC's [STX's] sole cost and expense.

c)   STX shall not destroy, erase or otherwise making unavailable for further proceedings, any records or documents (including data or information maintained in electric form, including computer media) in the possession, custody or control of STX or STX's counsel concerning the [appellants'] property, or evidence of costs incurred in the use or construction of the pipeline in controversy or any other equipment on the property.

d)   STX shall pay for all damages associated with the use of the [appellants'] property, and restore the property to its

> original condition or as close as possible at HSC's [STX's] sole cost.

> . . . .

The application for injunction was not verified. The evidence attached to the combined supplemental plea to the jurisdiction and application for an injunction consisted of two court opinions and deposition excerpts from Steven Stephens and Thomas McNeely, who testified about the processes and feedstocks used to make the PGP that would be transported in the pipeline. The court did not hold an evidentiary hearing on the request for temporary injunction. And at oral argument, counsel for the appellants stated that there was no other evidence that they could have submitted to the trial court relevant to the question of STX's power to condemn or the appellants' request for injunctive relief.

The trial court granted STX's combined motion for partial summary judgment, denied the appellants' plea to the jurisdiction, and denied the request for injunctive relief.

## Analysis

The appellants raise two issues on appeal. First, they argue that a product not made from crude petroleum or oil does not allow an entity to exercise the power of eminent domain under either section 2.105 of the Business Organizations Code or section 111.002(1) of the Natural Resources Code. Second, they argue that the trial

9

court abused its discretion by denying their request for injunctive relief after concluding that STX had the right to exercise the power of eminent domain.

STX has filed a motion to dismiss, arguing that this Court lacks jurisdiction over this appeal, which, STX maintains, is an improper attempt to appeal the interlocutory partial summary judgment.

## I.    Jurisdiction

### A.    Interlocutory appellate jurisdiction is strictly construed.

Whether we have jurisdiction is a question of law that we consider de novo. *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020). "[T]he general rule, with a few mostly statutory exceptions, is that an appeal may be taken only from a final judgment." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). We strictly construe statutes authorizing interlocutory appeals because they "'are a narrow exception to the general rule' that 'appellate courts generally only have jurisdiction over final judgments.'" *Bonsmara Nat. Beef*, 603 S.W.3d at 390 (quoting *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011)).

The Civil Practice and Remedies Code authorizes an interlocutory appeal of an order that grants or refuses a temporary injunction, but it does not authorize an interlocutory appeal of a partial summary judgment or a trial court's ruling on a plea to the jurisdiction, unless the plea was asserted by governmental unit.

*Compare* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4), *with id.* § 51.014(a)(8). We agree that we lack jurisdiction to review the trial court's interlocutory, partial summary judgment, but we conclude that we have jurisdiction to consider the trial court's denial of a temporary injunction. We deny STX's motion to dismiss this appeal.

## B. Subject-matter jurisdiction may be raised at any time.

The appellants did not seek a permissive appeal or file a petition for writ of mandamus challenging the trial court's ruling on their plea to the jurisdiction. In this Court, however, the appellants argue that STX is not a common carrier. We construe this to be an argument about whether the trial court has subject-matter jurisdiction. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (admonishing courts of appeals to construe appellate briefs "reasonably, yet liberally," to avoid waiver and reach the merits of appeal "whenever reasonably possible"); *Crawford Fam. Farm P'ship v. TransCanada Keystone Pipeline, L.P.*, 409 S.W.3d 908, 913–14 (Tex. App.—Texarkana 2013, pet. denied) (noting that subject-matter jurisdiction depended on pipeline's status as common carrier under Texas law). Thus, although we lack a statutory grant of interlocutory jurisdiction to review the trial court's summary judgment, we may consider de novo the appellants' arguments about subject-matter jurisdiction that are raised in this appeal. *See*

11

*Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008) (holding that subject-matter jurisdiction cannot be waived and can be raised at any time).

**C.     Common carriers have a statutory right to use the power of eminent domain to condemn property.**

Both the Texas Natural Resources Code and the Texas Business Organizations Code regulate hydrocarbon pipelines serving as common carriers. The following provisions are relevant to this case.

The Natural Resources Code states: "Common carriers have the right and power of eminent domain." TEX. NAT. RES. CODE § 111.019(a). "In the exercise of the power of eminent domain granted under the provisions of Subsection (a) of this section, a common carrier may enter on and condemn the land, rights-of-way, easements, and property of any person or corporation necessary for the construction, maintenance, or operation of the common carrier pipeline." *Id.* § 111.019(b). A person is a common carrier under the Natural Resources Code if he "owns, operates, or manages a pipeline or any part of a pipeline in the State of Texas for the transportation of crude petroleum to or for the public for hire, or engages in the business of transporting crude petroleum by pipeline." *Id.* § 111.002(1). "Crude petroleum" may include natural gas liquids. *See Hlavinka v. HSC Pipeline P'ship, LLC*, 650 S.W.3d 483, 493–94 n. 29 (Tex. 2022).[4]

---

[4]     Footnote 29 in *Hlavinka* provides:

12

The Natural Resources Code defines "oil" to include "crude petroleum oil." TEX. NAT. RES. CODE § 115.001(5). "Petroleum product" is defined to include . . . "any other liquid petroleum product or byproduct derived from crude petroleum oil or gas." *Id.* § 115.001(7)(X). And "gas" is defined to include ". . . gas produced from an oil or gas well." *Id.* § 115.001(3).

The Business Organizations Code authorizes business entities to use the power of eminent domain as well:

> In addition to the powers provided by the other sections of this subchapter, a corporation, general partnership, limited partnership, limited liability company, or other combination of those entities engaged as a common carrier in the pipeline business for the purpose of transporting oil, oil products, gas, carbon dioxide, salt brine, fuller's earth, sand, clay, liquefied minerals, or other mineral solutions has all the rights and powers conferred on a common carrier by Sections 111.019–111.022, Natural Resources Code.

TEX. BUS. ORGS. CODE § 2.105.

---

Natural gas liquids are liquid hydrocarbons that fall under the umbrella of crude petroleum. U.S. Energy Information Administration, Hydrocarbon gas liquids explained: Where do hydrocarbon gas liquids come from? Basics, https://www.eia.gov/energyexplained/hydrocarbon-gas-liquids/where-do-hydrocarbon-gas-liquids-come-from-in-depth.php (Oct. 26, 2021); *see also* U.S. Dep't of Energy, Natural Gas Liquids Primer, 5 (2018), https://www.energy.gov/sites/prod/files/2018/07/f54/NGL_Primer.pdf (categorizing propane as a natural gas liquid and stating that "NGLs are hydrocarbons—in the same family of molecules as natural gas and crude oil, composed exclusively of carbon and hydrogen").

"The power of eminent domain is substantial but constitutionally circumscribed." *Tex. Rice Land Partners, Ltd. v. Denbury Green Pipeline-Tex., LLC*, 363 S.W.3d 192, 197 (Tex. 2012) (*Texas Rice I*). The Texas Constitution prohibits the taking of private property for public use without adequate compensation.[5] TEX. CONST. art. I, § 17. Considering these constitutional protections, courts give "special scrutiny" to questions about a private entity's exercise of eminent domain. *Texas Rice I*, 363 S.W.3d at 197. A private entity relying on the statutory power to exercise eminent domain must strictly comply with all statutory requirements, and, when there is doubt as to the scope of the power, the use of such power is construed in favor of the landowner. *Id.* at 198.

In *Hlavinka*, the Texas Supreme Court held that PGP is an oil product under section 2.105 of the Business Organizations Code because it is derived from crude oil. *Hlavinka*, 650 S.W.3d at 494. Under the definitions provided by section 115.001 of the Natural Resources Code, the PGP produced by processing gas from a gas well through a dehydrogenation facility would be a "liquid . . . derived from . . . gas," and it would be a "petroleum product." *See* TEX. NAT. RES. CODE §§ 115.001(3), 115.001(5), 115.001(7)(X). Since "oil" includes, but is not limited

---

[5] "[E]vidence establishing a reasonable probability that the pipeline will, at some point after construction, serve even one customer unaffiliated with the pipeline owner is substantial enough to satisfy [the] public use requirement." *Denbury Green Pipeline-Tex., LLC v. Tex. Rice Land Partners, Ltd.*, 510 S.W.3d 909, 917 (Tex. 2017) (*Texas Rice II*) (citing *Tex. Rice Land Partners, Ltd. v. Denbury Green Pipeline-Tex., LLC*, 363 S.W.3d 192, 202 (Tex. 2012) (*Texas Rice I*)).

to, "crude petroleum oil," and PGP is a petroleum product, it would also necessarily be an "oil product" under section 2.105 of the Business Organizations Code. Thus, PGP is an oil product whether it is derived from the catalytic fracturing and distillation of oil, as in *Hlavinka*, or from the dehydrogenation of propane that might have come from a gas well, as is the situation here.

On appeal, the parties do not dispute whether the new pipeline will serve the public. *See Denbury Green Pipeline-Tex., LLC v. Tex. Rice Land Partners, Ltd.*, 510 S.W.3d 909, 917 (Tex. 2017) (*Texas Rice II*) (citing *Texas Rice I*, 363 S.W.3d at 202) ("[E]vidence establishing a reasonable probability that the pipeline will, at some point after construction, serve even one customer unaffiliated with the pipeline owner is substantial enough to satisfy [the] public use requirement."). Therefore, based on our analysis, we conclude that STX is a common carrier. As a common carrier, it has the right to exercise the power of eminent domain and to condemn the appellants' property in the absence of an agreement between the parties. Thus, we conclude that the trial court has subject-matter jurisdiction in this case.

## II.    Temporary injunction

The appellants argue that the trial court abused its discretion by denying their request for injunctive relief by misapplying the law to the facts regarding STX's right to exercise the power of eminent domain. We have already concluded

15

that STX has the right to exercise the power of eminent domain, so this argument is unavailing. There are several additional reasons why the court did not abuse its discretion by denying the request for injunctive relief.

### A. A temporary injunction is an extraordinary remedy that serves a limited purpose.

The purpose of a temporary injunction is "to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 555 (Tex. 2016) (quoting *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)). The "status quo" is the "last, actual, peaceable, non-contested status which preceded the pending controversy." *Id.* (quoting *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding)). A "temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Patel v. St. Luke's Sugar Land P'ship, L.L.P.*, 445 S.W.3d 413, 419 (Tex. App.— Houston [1st Dist.] 2013, pet. denied) (quoting *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993) (per curiam)).

A party seeking an injunction also has the burden of proof. *See Butnaru*, 84 S.W.3d at 204; *Patel*, 445 S.W.3d at 419. A temporary injunction is an extraordinary remedy that does not issue unless the party seeking relief pleads and proves three specific elements: (1) a cause of action; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204; *Patel*, 445 S.W.3d at 419. "An injury is irreparable if

16

the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204. The applicant need not establish that he will prevail at trial; rather, "the only question before the trial court is whether the applicant is entitled to preservation of the status quo of the subject matter of the suit pending trial on the merits." *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Patel*, 445 S.W.3d at 419.

**B. We review a trial court's order on a request for a temporary injunction for an abuse of discretion.**

Appellate courts review a trial court's ruling on an application for a temporary injunction for a clear abuse of discretion. *Henry v. Cox*, 520 S.W.3d 28, 33 (Tex. 2017); *Patel*, 445 S.W.3d at 419. Our review is limited to the validity of the order; we do not consider or determine the underlying merits. *Henry*, 520 S.W.3d at 33–34; *Patel*, 445 S.W.3d at 420. We review the evidence before the trial court in the light most favorable to its ruling, drawing all legitimate inferences from the evidence, and deferring to the trial court's resolution of conflicting evidence. *Patel*, 445 S.W.3d at 419–20. We will only overturn an order if it is "so arbitrary that it exceeds the bounds of reasonable discretion." *Henry*, 520 S.W.3d at 34 (quoting *Butnaru*, 84 S.W.3d at 204). There is no abuse of discretion if the trial court's ruling is reasonably supported by some evidence even if the ruling is based on conflicting evidence. *Id.*; *see Patel*, 445 S.W.3d at 419.

Special procedural rules apply to a request for injunctive relief. *See* TEX. R. CIV. P. 681–693A. "No writ of injunction shall be granted unless the applicant therefor shall present his petition to the judge verified by his affidavit and containing a plain and intelligible statement of the grounds for such relief." TEX. R. CIV. P. 682. "A verified petition for injunctive relief is not required to grant a temporary injunction, however, when a full evidentiary hearing on evidence independent of the petition has been held." *Mattox v. Jackson*, 336 S.W.3d 759, 763 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (citing *Georgiades v. Di Ferrante*, 871 S.W.2d 878, 882 (Tex. App.—Houston [14th Dist.] 1994, writ denied)).

### C.     The trial court did not abuse its discretion by denying the request for injunctive relief.

Several reasons support the trial court's denial of the application for a temporary injunction. First, as we have already explained, the court has subject-matter jurisdiction in this case because STX is a common carrier and entitled to exercise the power of eminent domain to condemn the appellants' property under the relevant statutes.

Second, the appellants failed to comply with formal requirements for obtaining a temporary injunction. The application for a temporary injunction was not verified, and the trial court did not hold an evidentiary hearing on the matter. Moreover, at oral argument, counsel for the appellants informed the Court that

18

there was no additional evidence that it could have presented at such a hearing to convince the trial court to grant the temporary injunction.

Third, the purpose of a temporary injunction is to preserve the status quo until a full trial on the merits can be made. But here, the appellants waited 27 months after STX filed its original petition for condemnation to seek a temporary injunction. Counsel for the parties informed this Court at oral argument that the pipeline in question was built and installed on the appellants' property between the filing of this suit and the application for injunctive relief. Appellants have not demonstrated what status quo they were trying to preserve because the status quo immediately preceding the request for injunctive relief was the existence of the pipeline on the appellants' property.

Fourth, the appellants have not shown the existence of a probable, imminent, and irreparable injury. *See Butnaru*, 84 S.W.3d at 204. Under Texas law, an irreparable injury is one that cannot be "adequately compensated in damages or [ ] the damages cannot be measured by any certain pecuniary standard." *Id.* The Civil Practice and Remedies Code provides that "[a] writ of injunction may be granted if . . . (5) irreparable injury to real or personal property is threatened, irrespective of any remedy at law." TEX. CIV. PRAC. & REM. CODE § 65.011(5). The appellants argue that they were not required to demonstrate the lack of an adequate remedy or risk of irreparable harm. Appellants' Br. 21–22. Under the plain language of

19

section 65.011(5), they did have an obligation to show that irreparable harm was threatened. The appellants' application for injunctive relief relied instead on conclusory statements, and it asserted: "Unless [STX] is enjoined, [appellants] will suffer probable injury and continue to suffer clear, immediate and irreparable injury/harm as a result of unlawful and tortious conduct." 2 Clerk's R. 2095. The evidence attached to the application for temporary injunction did not support a conclusion that irreparable harm was threatened.

Considering the appellate record and our analysis, we conclude that the trial court's denial of the request for injunctive relief was reasonably supported by some evidence and not an abuse of discretion. *See Henry*, 520 S.W.3d at 34; *Patel*, 445 S.W.3d at 419. We overrule both of appellants' issues.

### Conclusion

The appellee's motion to dismiss is denied. The pending motion to abate is dismissed as moot.

We affirm the order of the trial court.


Peter Kelly
Justice

Panel consists of Justices Kelly, Hightower, and Guerra.