**Opinion issued October 29, 2024.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00142-CV

———————————

**YOLANDA RIOS, Appellant**

**V.**

**LOUIS FRIAS, Appellee**

---

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-71724**

---

### MEMORANDUM OPINION

Appellant Yolanda Rios sued Appellee Louis Frias to quiet title to real property over which she and Frias assert ownership rights. Rios alleges that after her brother died, Frias moved into her deceased brother's home claiming ownership over the property based on a fraudulent deed. She requested a temporary injunction

prohibiting Frias, her deceased brother's son, from selling the home and requiring Frias to vacate the property pending a trial on the merits. After a hearing, the trial court granted Rios's request for injunctive relief in part, prohibiting Rios and Frias from selling the property pending a trial on the merits, but declining to order Frias to vacate the home.

In a single issue on appeal, Rios argues that although the trial court was correct in issuing the injunctive relief, the trial court nonetheless erred by refusing to order Frias to vacate the home pending a trial on the merits. She claims she was entitled to such relief because she established she has a cause of action against Frias, she has a probable right to recovery on her relief sought, she faces probable, imminent, and irreparable injury if Frias is allowed to remain in the home pending a trial on the merits, and allowing Frias to remain in possession of the home altered the status quo. Rios argues that the trial court effectively granted Frias injunctive relief to which he was not entitled because Frias broke into the home and thus has unclean hands.

We affirm the trial court's temporary injunction.

**Background**

On May 22, 2012, Luis Esquivel signed a deed conveying his home at 505 E. 39th Street, Houston, Texas 77022 ("Property") to himself and his sister, Appellant Yolanda Rios, as joint tenants with the right of survivorship. The deed was notarized and filed in the Harris County Clerk's records.

2

On September 6, 2023, Rios was notified that Esquivel had been found dead in his home. After Esquivel died, his son, Appellant Louis Frias, claimed ownership of the Property and recorded a November 6, 2008 deed purportedly conveying the Property from Esquivel to Frias.

On October 16, 2023, Rios filed a petition against Frias asserting a claim to quiet title to the Property. In addition to her claim to quiet title, Rios also asserted a claim against Frias under the Texas Uniform Declaratory Judgment Act ("TUDJA") asking the court to (1) "interpret Plaintiff's and Defendant's rights under the fraudulent deed filed by [Frias] and hold that such is false," (2) sanction Frias "per the fraudulent document statute," (3) "[d]etermine all other rights, remedies and recourses granted under her deed executed in 2012 or as may be now or hereafter existing in equity or at law, by virtue or statute of otherwise," (4) award her attorneys' fees pursuant to the TUDJA, and (5) "ultimately remove [Frias] from title and reach the 'goal of a suit to quiet title [] to clear the title to property from clouds or encumbrances' in [her] favor." In addition to declaratory relief and attorneys' fees, Rios also pleaded for "actual damages, punitive damages; pre and post judgment interest; court costs and all other relief at law or in equity which [she] shows herself to be entitled."

On October 30, 2023, Rios filed an application for a temporary and permanent injunction.[1]  In her application for a temporary injunction, Rios asserted that Frias was "currently exercising control over the real property at issue by moving his belongings in and changing the locks."  She alleged that Frias "is not the owner but is purporting to be the owner of the home" and he had "put up the home for sale."  Rios asked the court to issue a temporary injunction prohibiting Frias from "[s]elling, partitioning, leasing, or otherwise conducting any real estate or business transaction with the home," and ordering Frias to "[v]acate the premises" and "[n]ot tamper with, or otherwise attempt to destroy, diminish the value of, or waste the premises."

Rios attached her affidavit to her application for a temporary injunction.  She averred that Esquivel had given her the only key to the Property's gate, and that she is the only person with a key to the front gate and the house.  According to Rios, she

---

[1]     Rios also requested a writ of sequestration.  "Sequestration is the provisional seizure or setting apart of specific property upon which a party to a suit has a claim of ownership, or a right, lien, or privilege so as to preserve it pending the litigation and so that it may be subject to any final judgment or decree that may be rendered in the cause."  64 TEX. JUR. 3D *Replevin and Sequestration* § 3.  During the preliminary injunction hearing, the trial court denied Rios's request to "proceed with [her] writ of sequestration," stating "[t]here's no basis for a writ of sequestration for this."  Rios is not appealing the denial of her writ of sequestration.

Rios also filed an application for an ex parte temporary restraining order asking the trial court to "order[] Defendant Frias to remove the home out of the market for sale; and vacate the premises until further notice of this Court."  There is no indication in the clerk's record that the trial court ruled on Rios's application for an ex parte temporary restraining order.

and her partner changed the locks to the front door of the Property, locked the gate, and locked the back door. "At some point after," Frias inquired about Esquivel's whereabouts, and Rios told him Esquivel had died. Rios states that "Frias for the first time made a claim to the home at issue after [her] brother's death and filed a false deed into the property records." According to Rios, Frias put the Property for sale and "moved into the home, turned on the light and electricity, brought his furniture and pets, and [was] using the home as his."

During the hearing on Rios's application for a temporary injunction, Rios testified that her brother Esquivel executed a deed conveying an interest in the Property to her as a joint tenant with the right of survivorship. Rios, who had a joint checking account with Esquivel, testified that Esquivel gave her a key to the Property and authority to pay and manage his finances, bills, property taxes, insurance matters, and social security matters. She also stated that Esquivel authorized her to be his next of kin. Rios testified that Frias would visit Esquivel sometimes, but Frias never lived on the Property.

Rios testified that after Esquivel died, she told Frias that he could have some of Esquivel's possessions. She told Frias to call her when he wanted to pick them up and she would unlock the door to the Property. When Rios next visited the Property to clean the home, she found Frias inside, even though she had not unlocked

5

the Property or given him permission to be there. Rios testified she did not call the police because she "took pity" on Frias.

On September 11, 2023, Rios found Frias inside the home again and she called the police. According to Rios, Frias had "cut the locks and opened the back door and gotten inside." Rios testified that she changed the locks because Frias had broken the lock, took down a "For Sale" sign she had posted, and put on his own locks. Rios testified that she called the police a second time after Frias broke into the Property for the third time. By this time, Frias had moved into the home, and he appeared to be hosting a party. Rios testified that the police told her this was a civil matter and they refused to get involved because Frias had shown the officers a 2008 deed indicating Esquivel had conveyed the Property to Frias.

Rios testified that she is afraid of Frias because he has a conviction for sexual assault and he is "very violent."[2] Rios was concerned that Frias was planning to sell the Property and, in the meantime, the Property would be damaged because she did not believe Frias would be able to properly maintain the home.

Frias, appearing pro se, testified that Esquivel was his father and he had lived with his father on the Property. Frias testified that, on September 14, 2023, he recorded a deed with the Harris County Clerk's office, which was notarized on

---

[2] The record reflects that Frias, who was twenty-four years old at the time, was convicted of sexual assault of a child, a fifteen-year-old female, on July 10, 1998.

6

November 11, 2008. The deed purportedly conveyed the Property from Esquivel to Frias. According to Frias, he and Esquivel prepared the deed using a general warranty deed form.[3] When asked if he had recorded the 2008 deed "three days after the police were called for burglary when [he] broke into the house," Frias testified that he "never broke into [his] dad's house." According to Frias, he put locks on the gate and front door of the Property because the gate did not have a lock and the door "was open." Frias testified that Rios's husband had put a lock on the burglar bars.

When asked why he waited to record the 2008 deed until after his father died, Frias testified that he was not required to record the 2008 deed before Esquivel's death, stating "that's the only time . . . you can do to make a change." Frias testified that he had never paid taxes or maintained the home's structure because the house belonged to Esquivel and Esquivel "would do what he wanted to do with his house." According to Frias, Esquivel "would get upset if I did—you know, I never bothered my dad about his house."

Frias, who had been employed by a staffing company until September 2023, testified he had been unemployed for four months at the time of the hearing, and he

---

[3] Frias was questioned about the content of the 2008 deed, which Rios argues contains numerous irregularities and facial defects. The validity of the 2008 deed, however, is an issue that goes to the merits of the dispute over whether Rios or Frias has superior title to the Property. That issue is not before us in this interlocutory appeal. *See Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex. 1978) (stating merits of underlying case are not presented for appellate review in interlocutory appeals from temporary injunctions).

had approximately $600 in his banking account. Frias testified that he was receiving $2,200 in unemployment benefits every month and he was required to do "three work searches a week for [his] unemployment." When asked how he planned to pay the Property's taxes and upkeep, Frias testified he would use his unemployment benefits and he had family who could help him until he found stable employment.[4]

After hearing from the parties,[5] the trial court stated that she was granting a temporary injunction prohibiting the Property from being sold or otherwise disposed of, but she was denying Rios's request to have Frias ordered to vacate the Property. The trial court memorialized its ruling in a temporary injunction signed the same day. In its written temporary injunction order, the trial court found that Rios had met her burden to establish that "immediate and irreparable injury, loss or damage may result to [Rios] in the absence of injunctive relief," and that she had "establish[ed] a probable right to recovery based on the facts alleged in [her] application." The trial court also found evidence that "harm [was] imminent to

---

[4] In his closing argument, Frias told the trial court that since his father died, he had "fixed all the plumbing" in the home and repaired the bathroom floor, which was "falling apart," because he does "carpentry work." According to Frias, the Property is almost 100 years old, and he had done "so much repair[s] to it to try to keep it up because I'm living there and this winter was really cold." Frias told the trial court he had learned his lesson while serving his time in prison for the sexual assault conviction in 1998, and he was not a violent person. Frias, who was twenty-four years old when he was convicted, told the court that his relationship with the fifteen-year-old complainant had been consensual. He also told the trial court that he had not threatened or harassed Rios.

[5] Only Rios and Frias testified at the hearing.

8

[Rios], and if the Court d[id] not issue a temporary injunction, [Rios would] be irreparably injured because [Frias] allegedly put up the home for sale and might sell it in the forthcoming near future." The order further states:

> [Frias] disputes this and asserts [Rios] is trying to sell the home. Upon these facts, the Court finds that a TI is well merited against both parties. [Rios and Frias] are entitled to relief demanded and all or part of relief requires the restraint of some act prejudicial to the applicant, in this case, the sale of the home.
>
> . . . .
>
> The Court finds that irreparable injury to real or personal property is threatened, irrespective of any remedy at law, because both parties may have attempted to sell the home.
>
> . . . .
>
> It is therefore ordered that the Clerk of the Court issue a temporary injunction restraining both [Rios and Frias] as follows:
>
> [Rios and Frias], or any individual acting on their behalf are restrained and prohibited from: Selling, disposing partitioning, leasing, or otherwise conducting any real estate or business transaction with the home.
>
> . . . .
>
> The Court by this Order restrains both parties and any other party or entity from "tampering with, or otherwise attempting to destroy, diminish the value of, or improve or waste the premises, directly or indirectly, change the locks, gate codes; place locks; or alter the premises in any way. This does not prohibit routine maintenance or repair of the property.

The trial court struck the portions of Rios's proposed order related to Rios's request to require Frias to vacate the Property.

9

This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4) (permitting appeal from interlocutory order granting or refusing to issue temporary injunction).

## Temporary Injunction

In a single issue, Rios argues the trial court erred by refusing to order Frias to vacate the Property pending a trial on the merits because she established she has a cause of action against Frias, she has a probable right to recover on the relief sought, she faces probable, imminent, and irreparable injury if Frias is allowed to remain in the home during the pendency of the litigation, and allowing Frias to remain in possession of the Property altered the status quo. Rios also argues that the trial court effectively granted Frias injunctive relief to which he is not entitled based on the doctrine of unclean hands because Frias's possession is the result of unlawful conduct.

### A.     Standard of Review and Applicable Law

The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *Clark v. Hastings Equity Partners*, LLC, 651 S.W.3d 359, 366 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)). Temporary injunctions are an extraordinary remedy and do not issue as a matter of right. *Clark*, 651 S.W.3d at 366 (citing *Butnaru*, 84 S.W.3d at 204). To obtain a temporary injunction, an applicant is not

10

required to establish that it will prevail upon a final trial on the merits, but it must plead and prove that it (1) has a cause of action against the opposing party, (2) has a probable right on final trial to the relief sought, and (3) faces probable, imminent, and irreparable injury in the interim. *See Abbott v. Harris Cnty.*, 672 S.W.3d 1, 8 (Tex. 2023); *Clark*, 651 S.W.3d at 366.

There are two general types of temporary injunctions: prohibitive and mandatory. *Pharaoh Oil & Gas, Inc. v. Ranchero Esperanza, Ltd.*, 343 S.W.3d 875, 882–83 (Tex. App.—El Paso 2011, no pet.). While a prohibitive injunction forbids conduct, a mandatory injunction requires it. *Id.* at 883. A temporary mandatory injunction generally changes the status quo and should be granted only in cases of extreme hardship. *Id.*; *see Boatman v. Lites*, 888 S.W.2d 90, 92 (Tex. App.—Tyler 1994, no writ) ("It is only under exceptional circumstances that a mandatory injunction will be granted prior to a final hearing . . . .").

Because this is an interlocutory appeal from an order involving injunctive relief, we may not address the merits of the underlying action. *Patel v. St. Luke's Sugar Land P'ship, L.L.P.*, 445 S.W.3d 413, 420 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex. 1978)). Our review is strictly limited to determining whether there has been a clear abuse of discretion by the trial court in granting or denying the temporary injunction. *Id.*; *see also see also Allied Home Mortg. Capital Corp. v. Fowler*, No. 14-10-00992-CV,

2011 WL 2367086, at *5 (Tex. App.—Houston [14th Dist.] June 9, 2011, no pet.) (mem. op.) (stating trial court has broad discretion to determine whether applicant met its burden to establish all requirements for temporary injunction).

A trial court does not abuse its discretion if it bases its decision on conflicting evidence and at least some evidence in the record reasonably supports its decision. *See Patel*, 445 S.W.3d at 419. We may not substitute our judgment for that of the trial court unless its decision was so arbitrary that it exceeded the bounds of reasonableness. *See Butnaru*, 84 S.W.3d at 204.

## B. Imminent and Irreparable Harm

To secure a mandatory temporary injunction requiring Frias to vacate the Property, Rios was required to plead and prove, among other things, the existence of a probable, imminent, and irreparable injury. *See Abbott*, 672 S.W.3d at 8; *Butnaru*, 84 S.W.3d at 204. Harm is imminent for purposes of a temporary injunction when the commission of an act is more than speculative and the injury that may flow from the act is more than conjectural. *See Huynh v. Blanchard*, 694 S.W.3d 648, 679 (Tex. 2024); *see also Hotze v. Hotze*, No. 01-18-00039-CV, 2018 WL 3431587, at *4 (Tex. App.—Houston [1st Dist.] July 17, 2018, no pet.) (mem. op.). Evidence of imminent harm includes evidence demonstrating an actual injury, a pattern of actions by the party sought to be enjoined, or the party's threat to engage in the allegedly harmful conduct. *See Huynh*, 694 S.W.3d at 679 (stating "finding

12

of imminent harm can follow from a variety of circumstances, including actual injury, a pattern of actions, a threat to undertake harmful action, and other non-speculative bases to conclude that harm is impending").

Rios argues she proved the existence of imminent and irreparable harm because she presented evidence Frias took possession of the Property by "unpeaceable means" when he broke the locks and entered the Property without her permission. She states she is afraid of Frias because he is a sex offender with violent propensities. Rios argues that "waste of the premises is clearly ongoing, and Frias is unemployed." According to Rios, past of the waste "arises because Frias does not have the wherewithal to maintain the property for litigation which could continue for years." She argues Frias is unemployed and this "segways into whether or not Frias could not only care for the property, but also pay a judgment which would be rendered against him."

Although Rios argues that "waste is ongoing," Rios did not present any evidence that the Property is in disrepair, that Frias is not currently maintaining the Property or that Frias is engaging in "waste." *See id.* (stating imminent harm can follow from "actual injury, a pattern of actions, a threat to undertake harmful action, and other non-speculative bases to conclude that harm is impending"). Rather, Rios's concern is that Frias, who was unemployed at the time of the hearing, will

13

not be able to properly to maintain the Property in the future or satisfy any judgment that may be rendered against him.

Frias testified that he receives $2,200 in unemployment compensation every month and he is required to do "three work searches a week for my unemployment." The trial court thus heard testimony during the hearing that Frias is searching for employment. And when asked how he planned to pay the Property's taxes and upkeep, Frias testified he would use his unemployment benefits and he had family who could help him until he found stable employment. While Rios also claimed that Frias is violent, she did not explain why this entitled her to the requested relief, and she offered no evidence that Frias had threatened or harassed her in any way. Nor did she offer any evidence that Frias was not adequately maintaining the Property. Thus, at most, the evidence established that Rios was concerned that Frias would not have the financial resources to properly care for and maintain the Property in the future or satisfy any judgment rendered against him due to his unemployment. *Id.* (stating imminent harm exists when commission of harmful act is more than speculative and injury that may flow from harmful conduct is more than conjectural).

The temporary injunction the trial court issued prohibits Rios and Frias from "tampering with, or otherwise attempting to destroy, diminish the value of, or improve or waste the premises, directly or indirectly, change the locks, gate codes; place locks; or alter the premises in any way," but this "does not prohibit routine

14

maintenance or repair of the property." The trial court thus addressed Rios's concern by prohibiting Frias from engaging in conduct that would waste the Property or diminish its value, or from "altering the premises in any way."

To the extent Rios relies on the trial court's finding that she established an imminent and irreparable injury to support her argument that a mandatory injunction should have issued ordering Frias to vacate the Property, her reliance is misplaced. The trial court found there was evidence of imminent harm, and that if the court did not issue a temporary injunction, Rios would be irreparably harmed because Frias was allegedly attempting to sell the Property, not because Frias was in possession of the Property. The court's injunction states, "The Court finds that irreparable injury to real or personal property is threatened, irrespective of any remedy at law, because both parties may have attempted to sell the home." The court's finding of imminent harm was thus unrelated to Rios's request for injunctive relief requiring Frias to vacate the Property.

## C.    Status Quo

Rios argues that the trial court's temporary injunction does not preserve the status quo because "by allowing Frias to remain in the home, instead of ordering him to vacate, the trial court allowed Frias to continue his wrongful behavior," namely, breaking into the Property after Esquivel died and moving into the Property based on an alleged fraudulent lien. *See Pharaoh Oil & Gas, Inc.*, 343 S.W.3d at 882 ("The

status quo cannot be a violation of the law."); *see also Speedman Oil Co. v. Duval Cnty. Ranch Co., Inc.*, 504 S.W.2d 923, 928–29 (Tex. App.—San Antonio 1973, writ ref'd n.r.e.) (stating unlawful conduct "does not create a status quo which must be protected pending a final trial"). According to Rios, the evidence "clearly shows that the fraudulent deed filed by Frias is full of facial defects and legal language that is outside the scope of a garden variety land transfer," and this evidence "cuts against Frias." Rios further argues that "Frias broke the locks and took possession of the home."

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204. The status quo is "the last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004).

It is undisputed that Frias was living on the Property when Rios filed her petition on October 16, 2023. Had the trial court granted Rios's request to order Frias to vacate the Property, the trial court would thus have altered the status quo rather than preserved it. *See id.*; *see also Dyer v. Weedon*, 769 S.W.2d 711, 715 (Tex. App.—Waco 1989, no writ) (stating in cases involving possession of real property, status quo means "the last actual, peaceable, non-contested status of the parties and real property which existed immediately prior to the pending lawsuit"). While Rios contests Frias's right to possession of the Property, whether Frias has a

16

right to possession of the Property based on the 2008 deed and whether the deed is fraudulent are issues that go to the merits of Rios's suit to quiet title, which neither the trial court nor this Court is at liberty to address at this juncture. *See Davis*, 571 S.W.2d at 861–62 (stating appellate court's review of temporary injunction is limited to determining whether trial court made clear abuse of discretion and court may not address merits of underlying case); *see also Pharaoh Oil & Gas, Inc.*, 343 S.W.3d at 882 (stating status quo cannot be violation of law but that when central question in suit is whether status quo is violation of law, "determination should generally be made with a full trial on the merits").

## D.      Unclean Hands

Rios also argues that the trial court erred by not requiring Frias to vacate the Property because in failing to do so, the court effectively awarded Frias possession of the Property. She argues Frias is not entitled to possession based on the doctrine of unclean hands to equitable relief because he "broke the locks and filed a more than likely fraudulent deed." *See In re Jim Walter Homes, Inc.*, 207 S.W.3d 888, 899 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding) (stating trial court may refuse to grant party equitable relief based on doctrine of unclean hands if party engaged in "conduct in connection with the same matter or transaction has been unconscientious, unjust, or marked by a want of good faith, or one who has violated the principles of equity and righteous dealing"); *see also Lazy M Ranch, Ltd. v. TXI*

17

*Operations, LP*, 978 S.W.2d 678, 683 (Tex. App.—Austin 1998, pet. denied) ("[A] court may refuse to grant equitable relief to a plaintiff who has been guilty of unlawful or inequitable conduct regarding the issue in dispute.").

As we have discussed, whether Frias broke into the home without authority or unlawfully took possession of the Property are issues that go to the merits of Rios's suit to quiet title to the Property, which cannot be resolved in a temporary injunction. *Pharaoh Oil & Gas, Inc.*, 343 S.W.3d at 882 (stating when central question in suit is whether status quo is violation of law, "determination should generally be made with a full trial on the merits"); *see also DeVilbiss v. West*, 600 S.W.2d 767, 768 (Tex. 1980) (holding trial court erred by considering res judicata defense at temporary injunction hearing and appellate court erred by reviewing merits of res judicata defense on appeal).

We thus cannot say that the trial court clearly abused its discretion by denying Rios's request for temporary mandatory injunctive relief requiring Frias to vacate the Property. *See Davis*, 571 S.W.2d at 861–62 (stating temporary injunctions are reviewed for clear abuse of discretion); *see also Pharaoh Oil & Gas, Inc.*, 343 S.W.3d at 883 (stating temporary mandatory injunction generally changes status quo and should be granted only in cases of extreme hardship).

## Conclusion

We affirm the trial court's temporary injunction. All pending motions are dismissed as moot.


Veronica Rivas-Molloy
Justice

Panel consists of Justices Kelly, Landau, and Rivas-Molloy.